## Williams v. District Executive Board, U. M. W. of A.

*Unincorporated association—Executive board of—Rights of members of—Jurisdiction and power of court of equity over—Injunction of ultra vires and arbitrary acts of executive board—Qualification for office.*

1. The Court of Common Pleas has equitable jurisdiction over unincorporated associations, to preserve these associations and the tribunals created by their constitution and by-laws in the line of order, and to vindicate the rights of members therein against the illegal and arbitrary action of either the association or its executive officers and committees.

2. If a proceeding of an unincorporated association, or of the executive board of such association, against a member of the association, is not in accordance with the laws of the association, or if it is not a *bona fide* and fair exercise of the power given by the by-laws, a court of equity will interfere to redress the wrong.

3. When an unincorporated association acts in a judicial capacity with reference to matters of which it has undoubted jurisdiction under its laws, its decisions are conclusive on members and all others who assert rights under such laws, but when an executive board of such an association acts beyond its powers, and in its procedure violates the elementary principles of due process of law, to the prejudice of a member, a court of equity will interfere.

4. Where a district executive board of an unincorporated association declared that the name of a member who had been duly nominated for a district office should not be placed on the official ballot at a forthcoming election for said office, its action is *ultra vires*, and particularly where it appears that the board is a prejudiced tribunal and acted in an arbitrary and illegal manner, without due process of law, equity will by injunction restrain said district board from printing and distributing official ballots with the said candidate's name omitted therefrom.

5. The word "prior," as used in a by-law declaring that a member "shall be eligible to hold office provided he has been a member of a local union for one year prior to his election," is not synonymous with "immediately preceding." "Prior" means "former," "anterior," "previous." Hence, a member who has belonged to a union for more than one year at a time previous to his candidacy for office is eligible to office under such a by-law, even though his membership lapsed during a part of the year immediately preceding his candidacy.

Rule to dissolve injunction. C. P. Lackawanna Co., June T., 1921, No. 8, in Equity.

*C. B. Little,* for plaintiff; *W. J. Fitzgerald,* for defendants.

MAXEY, J., June 6, 1921.—In this case we find preliminarily the following facts:

1. Enoch Williams, the plaintiff, was a member of Pyne Local Union No. 901, United Mine Workers of America, continuously for twenty-one years prior and up to Sept. 20, 1920.

2. On Sept. 20, 1920, the said Enoch Williams withdrew his transfer card from Pyne Local No. 901 and deposited the same with Taylor Local Union No. 1013, United Mine Workers of America. He was accepted in that organization on Sept. 21, 1920. He paid his dues as a member of Taylor Local No. 1013 from the time of his admission to said local. The said dues were received by the officials of Taylor Local No. 1013.

3. On Sept. 21, 1920, John L. Lewis, National President of the United Mine Workers of America, revoked the charter of the said Pyne Local No. 901, U. M. W. of A.

4. On March 4, 1921, the said John L. Lewis, President U. M. W. of A., restored the charter of the said Pyne Local Union No. 901, U. M. W. of A.

5. On April 1, 1921, the said Enoch Williams, plaintiff, withdrew his transfer card from Taylor Local Union No. 1013 and deposited the same with Pyne

Local Union No. 901, U. M. W. of A. He was on said date accepted in said Pyne local. He paid his dues therein and has continued to be a member of said Pyne local.

6. On April 25, 1921, the said Enoch Williams, plaintiff, was duly notified by John M. Mack, Secretary-Treasurer of District No. 1, U. M. W. of A., that the said Enoch Williams had been nominated by three or more local unions of the said U. M. W. of A. for the office of secretary-treasurer in District No. 1, U. M. W. of A., for the term beginning Aug. 1, 1921.

7. That the said Enoch Williams, within one week after being notified as aforesaid of his nomination for the office of secretary-treasurer, gave his consent to become a candidate for said office.

8. On May 18, 1921, Evan Cann, of Wilkes-Barre, Pa., addressed to the executive board of District No. 1 a letter protesting against the name of Enoch Williams appearing on the ballot at the coming election for the office of secretary-treasurer of District No. 1, stating in said letter that "the charter of Local Union 901, of which Enoch Williams is a member, was revoked during the latter part of 1920, and was not reinstated until February, 1921. . . . Enoch Williams is not a member of a local union long enough to be a candidate for a district office, and I hereby file a protest as above stated."

9. On May 19, 1921, at a meeting of the executive board of District No. 1, U. M. W. of A., a motion was made and carried "that Mr. Enoch Williams be duly notified to appear before this board on May 20, 1921, at 1 o'clock, to show cause why his name should not be kept off the ballot as a candidate for the office of secretary-treasurer at the election to be held June 9, 1921."

10. At the meeting of the executive board on May 20, 1921, a motion was carried "that the protest of Evan Cann against the eligibility of Enoch Williams as a candidate for the office of secretary-treasurer be received."

Enoch Williams, the plaintiff, was then called before the executive board and Cann's protest against him was read. Williams was then interrogated as to the lawfulness of his transfer to the Taylor local.

At this meeting Evan Cann, who protested the eligibility of Williams, did not appear.

After Williams was interrogated by the executive board, the meeting adjourned to May 21, 1921.

11. On May 21, 1921, the district executive board met, and the protest of Evan Cann against the eligibility of Enoch Williams as a candidate for the office of secretary-treasurer was taken up for disposition. It was then "moved by board member Reap, seconded by board member O'Donnell, that the protest be sustained and that Enoch Williams's name be not placed on the official ballot. Motion carried unanimously."

Williams was not present at this meeting.

12. Immediately after being notified of the action of the district board declaring Enoch Williams ineligible as a candidate for said office, Williams sent a night letter to John L. Lewis, International President, U. M. W. of A., appealing from the decision of the district board of District No. 1. In reply thereto, President John L. Lewis, on May 23, 1921, sent a telegram to Williams, stating as follows:

"Replying your wire to the International union cannot accept jurisdiction of the appeals as an individual; in such a case, section 3 of article 3 of the International constitution limits the right of appeals of an individual through the district executive board, except in such instances as involves his membership."

1 D. & C.

*Laws of the United Mine Workers of America.*

Article 4, section 1, constitution of District No. 1, U. M. W. of A., provides as follows:

"A member in good standing in the organization shall be eligible to hold office in the district, provided he has been a member of a local union for one year prior to his election, and is at present employed in or around the mines: Provided, however, that this shall not refer to any member employed by the organization."

Article 9, section 4, of the aforesaid constitution of District No. 1, U. M. W. of A., provides as follows:

"No person shall be elected to office unless he has been nominated by three or more locals, and no nominee shall have his name placed upon the official ballot unless he gives his consent to become a candidate within one week after being notified by the district secretary."

Article 15, section 11, of the constitution of the International Union, U. M. W. of A., provides as follows:

"Any member withdrawing his transfer card from a local shall be known as a member of the local issuing the card, until it is deposited with some other local or until the card is lapsed."

Article 15, section 14, of the constitution of the International Union, U. M. W. of A., provides as follows:

"To protect the membership of members residing where no local union is established, the international, district or sub-district secretaries shall, upon presentation, accept transfer cards and dues and assessments from such members, but no such secretary shall accept transfer cards, dues or assessments from members having access to a local union."

The "sub-district secretaries" referred to in section 14 does not mean the secretaries of local unions. Section 14 refers to a situation in which a mine worker resides where no local union is established, and it gives him an opportunity to deliver his transfer card to the secretary of his sub-district, thereby becoming, as it were, a "member at large."

Article 18 of the constitution of the International Union, U. M. W. of A., refers to charges and methods of trials. Section 1 of said article provides for the trial of officers of the organization, other than local officers, who are charged with an alleged official offence against the organization or against any of its members.

Section 2 of said article provides as follows:

"When any local officer or any member not an officer is accused of violating any of the organization's laws or of any transgression against the organization or any of its officers or members, the charge must be first lodged with and prosecuted before the local union of which the alleged offender is a member," etc.

We find nothing in the article referring to charges and methods of trials, or elsewhere in the constitution of the International Union or in the constitution of District No. 1, U. M. W. of A., with reference to any tribunal to determine the right of a member of a local union to have a place on the official ballot for the election of officers at the annual election. Article 3, section 4, of the constitution of District No. 1, U. M. W. of A., which defines the powers of the executive board, is silent as to any authority of the executive board to determine what candidates' names shall appear upon the official ballots of the organization. The "grievances" which said section gives said board the

power to decide has a very definite and restricted meaning in union labor affairs and cannot be construed to include Evan Cann's protest.

## Discussion.

The first question raised in this proceeding by the defendants is as to the right of a court of equity to take jurisdiction of a controversy of this kind. This is the question we will first consider.

Section 13 of the Act of the General Assembly of the Commonwealth of Pennsylvania, approved June 16, 1836, P. L. 789, provides as follows: "The several Courts of Common Pleas shall have the jurisdiction and powers of a court of chancery, so far as relates to (inter alia), fifth, the supervision and control of all corporations other than those of a municipal character, and unincorporated societies or associations and partnerships."

The courts of equity in Pennsylvania have long asserted their right to interfere in certain cases in matters relating to unincorporated societies. In the case of Powell v. Abbott, 14 Phila. 104, it was held that "the defendants are an unincorporated association, and as such, by virtue of the Act of June 16, 1836, P. L. 789, are subject to the equitable jurisdiction of the Courts of Common Pleas. It has been well settled by numerous adjudications that the courts entertain a jurisdiction to preserve these associations and the tribunals created by them under their constitutions in the line of order and to correct abuses." See, also, Monongahela City Baptist Church v. Shaw, 36 Pa. C. C. Reps. 514; Harmon v. Raub, 25 Pa. C. C. Reps. 97.

Manning v. Klein, 1 Pa. Superior Ct. 210: "The appellate courts and the several Courts of Common Pleas, under the Act of June 16, 1836, P. L. 784, have jurisdiction and powers of a court of chancery, so far as relates to the supervision and control of all corporations other than those of a municipal character, and also of unincorporated associations and partnerships."

Sperry's Appeal, 116 Pa. 391: "Upon the complaint of a member of an unincorporated beneficial society that he has been wrongfully suspended and deprived of the benefits of his membership, and praying that he be restored thereto, equity has jurisdiction to inquire into the regularity of the proceedings under the constitution and laws of the society."

Wallace v. Trustees of General Assembly, United Presbyterian Church, et al., 201 Pa. 292: "A minister dismissed by action of his congregation, which dismissal was sustained by the General Assembly, filed a bill in equity against the General Assembly to declare its action void on the ground that the procedure followed was not in conformity to church law. The court below found as a fact that there were irregularities in the proceedings before the General Assembly which rendered its decision null and void. The Supreme Court held, inter alia, that the plaintiff had a right to have his dismissal from the congregation declared unlawful by the civil courts. The decree restoring him to his pastorate was affirmed."

Metropolitan Baseball Club v. Simmons et al., 17 W. N. C. 153: "It was held that membership in a national association of baseball clubs was a property right of which the complainant could not be deprived without having done some act which was ground and cause of forfeiture, or without notice and trial. It is said that the association possesses no property itself. While it may have very little property itself, it is evident it has some property. It pays its president . . . a salary of $1800 a year. . . . The privilege of playing with the other clubs (is) the source of very great profits. . . . These are certainly rights of property which are entitled to the protection of the law.'"

We do not deem it necessary in this proceeding to determine whether or not

1 D. & C.

Enoch Williams has been deprived of a property right. "While courts have been quicker to protect members of unincorporated societies when their property rights were involved, they have not always expressed clearly this distinction as a ground for their decisions:" Wrightington on Unincorporated Associations, § 56. Nevertheless, we deem it pertinent to here refer to the fact that, according to the constitution of District No. 1, U. M. W. of A., the salary of the position for which the plaintiff, Enoch Williams, was nominated, to wit, secretary-treasurer of the district union, is fixed by article 5, section 1, at $2162.16 per year, and all legitimate expenses. If the executive board of the district can deprive a member of a local union of his right to become a candidate for this position, they are depriving him of something that comes very near to being a right of property, or at least a potential right of property.

We believe the authority of a court of equity to interfere in matters relating to the rights of members of an unincorporated association is best expressed in Kerr on Injunctions (3rd ed.), chap. 19, page 562, as follows:

"The court (of equity) has jurisdiction to restrain the committee or a general meeting of the club from expelling a member of the club, but in exercising the jurisdiction the court does not sit as a court of appeal from the decision of the members of the club duly assembled. All that the court requires is that their proceedings be conducted on the common principles of ordinary justice. The court will not interfere against the decision of the members of a club expelling a member of the club, unless it can be shown either that what has been done is not authorized by any rule of the club or is not regular, or that, if it be within any rule of the club, the rule is not consonant with the principles of natural justice, or that there has been *mala fides* or malice in arriving at the decision."

(Page 563): "If the proceedings of the committee or members of a club in expelling a member have been in strict accordance with the rules, and the rules are not in any way contrary to natural justice, the next consideration for the court is whether the proceedings have been in the *bona fide*, honest exercise of the powers given by the rules. If the committee, acting *bona fide* and without malice, come to the conclusion that a man is not a fit member of the club, or that his conduct is injurious to the interests of the club, the court will not interfere. It is not for the court to consider whether it should have arrived at the same conclusion or not. . . . The only question is whether it was *bona fide*. The question whether the decision was erroneous or not can only be taken into consideration in determining whether that decision is so absurd or evidently wrong as to afford evidence that the action was not *bona fide*, but was malicious or capricious or proceeding from something other than a fair and honest exercise of the powers given by the rule."

While the above quotation refers to the right of an unincorporated society to expel a member, it is clear to us that the same rule applies as to the right of a committee of an unincorporated association to deprive a member of his right to be a candidate for office in that association. If courts of equity can supervise the expulsion of a member by the entire club, they can certainly interfere to prevent a denial by a mere executive board to a member of his right to be recognized as a candidate for office in such association.

It is, therefore, very clear to us, both in reason and in authority, that we have jurisdiction as a court of equity of the subject-matter of this controversy submitted to us for adjudication.

The next question is, should we award to the plaintiff the relief he seeks? We are persuaded that we should for the following reasons:

1. We find nothing in the constitution or by-laws of either the International Union or District No. 1 which gives to the executive board any power to declare that Enoch Williams, the complainant, was ineligible to become a candidate for the office of secretary-treasurer of the district organization. The act of this executive board was, therefore, *ultra vires*.

2. The proceeding of the executive board was not *bona fide* and was not a fair exercise of any actual or imaginary power possessed by the executive board. The whole proceeding savors of a "cut-and-dried" program to deny the complainant, Williams, his right to become a candidate for the office of secretary-treasurer of the district. In support of this conclusion we cite the following facts:

(a) Daniel McCue, one of the five member of the executive board, who was present at the meeting which denied to Williams the right to have his name on the official ballot, declared to Garfield Lewis on Friday, May 20, 1921, prior to the hearing in the Williams case before the executive board, "Enoch Williams's name is not going to be on the ballot." This indicates prejudice and prejudgment of the matter in controversy by one of the tribunal that passed upon the question of Williams's eligibility. The evidence as to McCue's statement to Lewis was corroborated by the testimony of Peter Calas and Ranaldo Capalini.

John Collins (Kolodziecjzak), who was one of the five executive board members constituting the tribunal that declared Enoch Williams ineligible for a position on the official ballot, stated to George Isaacs, several weeks before the meeting of the executive board, "We will see that Enoch Williams won't be on the ballot." Evidence as to Collins's prejudice and prejudgment was corroborated by the testimony of Ranaldo Capalini.

James Gleason, who was a member of the tribunal that declared Enoch Williams ineligible for a place on the ballot, made a statement to John Ruane before the district board took action on Cann's protest against Williams. This statement is open to the inference that Gleason also had prejudged Williams's case before formal hearing. This evidence as to Gleason's prejudice was also given by Alexander Campbell, a witness called for the plaintiff.

(b) The notice that was sent to Williams on May 19, 1921, informed him to appear and give reasons why his name should not be kept off the ballot. This indicates that the executive board presumed Williams "guilty" before trial and put upon him the *onus* of proving himself "innocent." Inasmuch as Evan Cann charged that Williams was ineligible, the procedure dictated by common justice should have been that Williams should simply have been notified to appear to hear Cann's charges, and the burden should have been upon Cann to prove Williams's ineligibility. On the contrary, the burden was put upon Williams to prove that he was eligible.

(c) Williams was given but one day's notice to appear to give reasons why his name should be placed on the ballot. This abrupt and summary procedure is not consonant with due process of law, either unincorporated association law or the law of the Commonwealth.

(d) The minutes of the meeting of the executive board show that Williams was given "short shrift." According to the minutes, "Mr. Enoch Williams was then called before the board and was informed by President Collins as to why he was called." It seems to us that Mr. Evan Cann should have been called before the board and should have been directed to substantiate his claim that Enoch Williams was not eligible for the office he was seeking. Mr. Cann, the one who averred Williams's ineligibility, was nowhere in sight or hearing. It is a fundamental principle of justice that any man on trial for any offence

1 D. & C.

has the right to meet his accuser face to face. The proceedings at Williams's so-called trial were significantly brief. A verdict of guilty was not even rendered in the presence of the defendant at the bar. The court adjourned and the next morning reconvened, and forthwith, upon reconvening, it was "moved by board member Reap, seconded by board member O'Donnell, that the protest be sustained and that Enoch Williams's name be not placed on the official ballot. Motion carried unanimously."

In view of the fact that the district executive board usurped to itself powers, which the constitution and laws of the organization nowhere give it, to declare a candidate who has been duly placed in nomination ineligible to have his name on the official ballot; in view of the fact that three of the board of five judges who tried the plaintiff gave evidence of their prejudgment of the case before the tribunal met; in view of the fact that the plaintiff was given only one day's notice to appear and that the burden of proving himself eligible was placed upon him rather than putting the burden of proving him ineligible upon Evan Cann, who asserted it; in view of the fact that the plaintiff was not allowed to meet his accuser face to face, so that the latter might be examined as to who and what prompted the protest, we hold that the plaintiff was denied that due and fair process which all accused persons are entitled to when tried before any tribunal in the world, whether the tribunal be one constituted by the Commonwealth or one constituted merely by an unincorporated association.

As pointed out by the legal authorities we have quoted, it is not for the court to consider in a case of this kind whether it should have arrived at the same conclusion as the tribunal arrived at or not. However, the question whether the decision was erroneous or not can be taken into consideration in determining whether the decision of the tribunal was so absurd or evidently wrong as to afford evidence that the action was not *bona fide,* but was malicious or capricious or proceeding from something other than a fair and honest exercise of the actual or assumed powers. We deem it pertinent to state that we find nothing in the constitution, rules and by-laws of the United Mine Workers of America that, in our opinion, would justify the claim that Enoch Williams was not entitled to a place on the official ballot. It is conceded that he was duly nominated for secretary-treasurer in the manner provided by the constitution and by-laws of District No. 1, U. M. W. of A., to wit, that he had been nominated by three or more locals, etc. The substance of article 9, section 4, is that any person who has been nominated by three or more locals, and who has given his consent to become a candidate within one week after being notified by the district secretary, is entitled to have his name placed upon the official ballot. There is nothing in the record that discloses that Williams failed to comply with these provisions of section 4 of article 9.

Section 1 of article 4, which refers to the qualification of officers, states that "a member in good standing in the organization shall be eligible to hold office in the district, provided he has been a member of a local union for one year prior to his election, and is at present employed in or around the mines." This defines a member's eligibility to hold office; it says nothing as to the right of a person duly nominated to have his name on the official ballot.

Furthermore, Enoch Williams is a member in good standing in the organization, and he has been a member of a local union not only for one year, but for twenty years "prior" to the present time. The construction placed by the defendants upon the word "prior" in section 1 of article 4, that before a member is qualified to hold office he must be a member of a local union for one year immediately previous to his election, is a strained construction.

"Prior" means "preceding in the order of time; former; antecedent; anterior; previous:" Webster's Dictionary. If it was intended that to make a person eligible for office he must have been "a member in good standing in the organization" for one year *immediately preceding* the election, the section should have been drawn so as to be free from all ambiguity on this point; as, for example, section 1 of art. VIII of the Pennsylvania Constitution of 1874, which defines the qualifications of an elector in Pennsylvania as follows: "He shall have resided in the State one year *immediately preceding* the election. He shall have resided in the election district where he shall offer to vote at least two months *immediately preceding* the election." Likewise the Act of June 16, 1911, § 5, P. L. 1014, providing for the qualifications of registrars, states that they "must be duly qualified electors" . . . of the election district for which they are appointed, "and shall have been residents . . . of the ward for one year *immediately preceding* their appointment."

Furthermore, if the construction contended for by the defendants is correct, we should hesitate to hold, were the question before us, that Williams's membership in the Taylor local was a nullity and that it does not count in computing one year's membership immediately preceding the election. He transferred from the Pyne local to the Taylor local, and was accepted by the latter as a full-fledged member and permitted to pay his dues as any other member of the local. If there was anything illegal about his transfer, said transfer might have been attacked in the proper manner; but, *prima facie*, Williams was a member in good standing in Taylor local from Sept. 21, 1920, until he transferred back to the Pyne local on April 1, 1921. We do not expressly decide this question as to whether or not Williams was a member of a local union for one continuous year just previous to the present election; we do not deem it necessary in this proceeding for us so to hold; but we refer to this question merely to show the extremely trivial and technical character of the attempted justification of the denial of Williams's right to a place on the official ballot as a candidate for secretary-treasurer.

That the mere prejudice of a tribunal that passes upon a member's rights may in itself be sufficient to justify the interposition of a court of equity was held in the case of Wilcox v. Supreme Council, Royal Arcanum, 210 N. Y. 370; s. c., 104 N. E. Repr. 624, in an opinion by Governor Miller, of New York, when he was a member of the Court of Appeals of that state. That case held that the validity of the expulsion of a member of a beneficial society by a prejudiced committee may be collaterally attacked in an action on his certificate, where there is no method of directly reviewing such expulsion.

To the same effect is Correia v. Supreme Lodge (Mass.), 105 N. E. Repr. 977, in which case it was held that to render a decision of a tribunal of a beneficial society expelling a member conclusive and binding upon the civil courts, the procedure before the tribunal must have been fair and in conformity with the rules of the association; that hearings of this character are quasi-judicial and ought to be conducted in a spirit of impartiality, without prejudice, and reasonably full opportunity ought to be given to learn the nature of the charges preferred and to present evidence and arguments in reply. To the same effect, also, is People ex rel. v. McDonough, 8 App. Div. 591; s. c., 40 N. Y. Supp. 1147, which held that the member is entitled to an impartial tribunal, and if the method of trial is not regulated by the laws of the association, it should be analogous to ordinary judicial proceedings, so far at least as to conform with substantial justice.

Looking at this controversy from another standpoint also, that of fair play, we feel that we are justified in continuing the injunction forbidding the
1 D. & C.

defendants from excluding the plaintiff's name from a place on the official ballot. A member in good standing for twenty years, he was duly placed in nomination for the office he seeks, and if for any reason the membership of District No. 1 desire to have another person than the complainant for their secretary-treasurer, they will have an opportunity to say so by the ballots they cast. On the other hand, if the membership of District No. 1 desire Enoch Williams to be their secretary-treasurer, it is highly unjust that their will should be thwarted by the arbitrary action of the executive board that constituted itself without any warrant of law a tribunal to decide that Enoch Williams's name should not be placed upon the official ballot.

If the constitution and by-laws of the United Mine Workers of America provided for the raising of the question of a member's eligibility to be placed on the official ballot, and created a tribunal to determine that question, and directed the mode of procedure, and if that tribunal had determined that question in substantial compliance with the mode prescribed and in consonance with the spirit of fair play, the adjudication of that tribunal would with us be conclusive and we would not attempt to interfere with said adjudication, even though we deemed it in fact erroneous. But in the case at bar we find just the opposite situation. The executive board members had no authority to constitute themselves a tribunal to declare what candidates' names should be on the official ballot. They had no more authority to determine that question than the commissioners of the county would have, for example, to determine what candidates' names would be placed on the official ballot for county offices. The district board of the United Mine Workers of America has no more authority to keep off the ballot the name of a person duly nominated for a district office than they have to put on the ballot the name of a person not duly nominated for a district office. Either act is equally a usurpation of power and authority. Furthermore, the mode of procedure followed contravenes every fundamental principle of due process and betrays a disposition and a premeditated plan to deprive the plaintiff of his rights as a candidate for district office.

Judge Smith, in Myers *v.* Fritchman, 6 Pa. Superior Ct. 580, 583, said: "When the organization acts in a judicial capacity with reference to matters of which it has undoubted jurisdiction under its laws, its decisions are conclusive on members and all those who claim under its laws; hence, they cannot resort to the courts with alleged grievances which have thus been passed upon." Here, first, the organization has not "acted;" second, the district board, purporting to act for the organization, has not "acted in a judicial capacity" on a matter of which it has "undoubted" or any other kind of "jurisdiction under its laws." Its act is, therefore, illegal, and as it tends to deprive the plaintiff of an undoubted and valuable right, a proper case is presented for the intervention of a court of equity in the supervision of unincorporated associations as provided by the Act of June 16, 1836, P. L. 785, 789.

The district board is but the creature and servant of the United Mine Workers of District No. 1. That board has no power except the power given it by the constitution and by-laws of the United Mine Workers. When it acts outside of the scope of its authority, its actions are personal, not official. The district board has no more authority to deprive a duly nominated member of a place on the official ballot than it has to deprive a duly elected official of the emoluments of his office.

The action of the five members of the district executive board who by their acts nullified the nominations made by three local unions is repellent to one's instinctive sense of justice. Not only did this self-constituted tribunal have

no authority to take the action they did take, but their procedure was arbitrary and summary and bore every evidence of being a preconcerted plan to deny to the plaintiff his rights as a member of the organization and to deny to the three locals who placed him in nomination their rights as constituent parts of District No. 1, United Mine Workers of America.

It is clear to us that we have jurisdiction in this matter to award to the complainant the relief he seeks, and that equity will be done by the continuance of the injunction until final hearing.

*Order.*

Now, to wit, June 6, 1921, it is ordered that the rule to show cause why the injunction should not be dissolved be discharged, and that the injunction remain in full force and effect until final hearing or until the further order of the court.

From M. E. McDonald, Scranton, Pa.