116     391
26 SC ²423
26 SC ¹424

# APPEAL OF AARON SPERRY ET AL.

APPEAL FROM THE COURT OF COMMON PLEAS OF MONTGOM-
ERY COUNTY—IN EQUITY.

Argued April 22, 1887—Decided May 16, 1887.

1. Upon the complaint of a member of an unincorporated beneficial
   society that he has been wrongfully suspended and deprived of the
   benefits of his membership, and praying that he be restored thereto,
   equity has jurisdiction to inquire into the regularity of the proceedings
   under the constitution and laws of the society, but not into the merits of
   what has passed into judgment in a regular course of proceedings.
2. When, however, it is found that irregularities existed in the proceed-
   ings resulting in the act complained of, yet that they were waived by
   the complainant at the time, equity will not grant relief.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and
CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 377 January Term 1886, Sup. Ct.; Court below, No. 6
March Term 1884, C. P. in equity.

I. D. Rosenberger filed a bill in equity in the court below
against Aaron Sperry et al., members of Springhouse Lodge,
No. 329, I. O. O. F. of Pennsylvania, setting forth a wrong-
ful suspension from the lodge and praying for a decree of res-
toration to membership and an account of benefits to which
he was entitled. An answer having been filed, MR. F. G.
HOBSON was appointed Master, who found the following facts:

That the plaintiff was a member of said lodge from Septem-
ber 1, 1849, and in good standing until July 1, 1881; that on
April 30, 1881, he was reported sick to the lodge and on May
14, 1881, he demanded by letter two weeks benefits; that on
July 9, 1881, James M. Walters, a member, preferred charges
against him, alleging that he was attempting to defraud the
lodge by a feigned sickness and disability; upon which charge
an investigation or trial committee was appointed in con-
formity with the laws of the order, and notice served; that at
the date and place the committee were to meet, the plaintiff
attended, but as only three members of the committee appear-
ed nothing was done; that on August 13, 1881, the lodge ap-

pointed a new committee of five members, to investigate the charges, and at their meeting, the plaintiff did not attend, and on August 27, 1881, he was reported to the lodge as in contempt; that on September 10, 1881, the plaintiff was expelled from the lodge for his failure to attend the trial committee; that he then appealed to the Grand Lodge of Pennsylvania, which body reversed the action of the lodge below and recommended that the plaintiff be tried on the original charge; that then the lodge proceeded to try the plaintiff upon the original charge and by the committee already appointed, one of whom then resigned and another member was appointed in his stead; that at a full meeting of the committee on March 28, 1882, the plaintiff and his counsel were present and testimony was taken; that at this hearing the plaintiff called Dr. B. K. Johnson, whose testimony was rejected by the committee on the ground that he had not attended the plaintiff until after the charge had been filed in the lodge; that the committee found and reported that the plaintiff was guilty on all the specifications of the charge and on April 15, 1882, the plaintiff being present at the lodge meeting, the report of the committee was considered and its finding made the judgment of the lodge; whereupon a motion to expel was lost, but a motion to suspend the plaintiff for two years was carried by the necessary vote; that plaintiff then appealed to the Grand Lodge, and thence to the Sovereign Grand Lodge, and his appeals were dismissed, whereupon he filed this bill.

The master further reported:

1. That the charge made, if true, was not found to be sufficient to expel, or to suspend, the plaintiff.

2. That the appointment of the investigation or trial committee was not in conformity with the constitution and laws of the order, in that the N. G. had appointed two members, the V. G. two, and the N. G. the fifth member, whereas the plaintiff had the right to appoint the fifth member; but that the plaintiff had expressly waived this irregularity.

3. That the proceedings before the said committee were irregular in this: (1), that the committee refused to take and report the testimony of Dr. Johnson who had attended the plaintiff in his sickness, on the ground that the attendance was after the charge was filed; (2), that the lodge itself ap-

pointed counsel to prosecute, and (3), that the evidence taken was not read to the lodge,—all which was contrary to sections 3 and 4, article VIII., of the constitution of the lodge.

4. That the master had no right to inquire into the merits of the case on the charge made.

5. That the plaintiff had a right to an account of the benefits he should have received, which were found to be $600.50.

The master recommended a decree that the plaintiff be reinstated in his membership and that the defendants pay the said sum of $600.50 as benefits to which he was entitled from April 30, 1881, to April 10, 1884.

The following are provisions of the constitution of the lodge:

## ARTICLE VIII.

Sec. 3. It shall be the duty of the committee to examine the parties, their proofs and witnesses, giving the member charged notice and full opportunity to be present at the examination. The accused and the accuser shall each have the right to be represented before the committee, by a member of the order. The committee shall keep a correct journal of its proceedings, and shall also reduce the testimony taken to writing, to be signed by the witness; after having heard the evidence they shall reduce their opinion as to the guilt or innocence of the person charged, on each charge, to writing, and report the same, together with the journal and the original copy of the testimony, to the lodge at its earliest meeting.

Sec. 4. After the presentation of the report of the committee to the lodge, the brother charged shall be notified thereof, and at the next stated meeting of the lodge the report shall be considered; after consideration a ballot shall be taken, and if a majority of the votes approve the finding of the committee, it shall be recorded as the judgment of the lodge. If found guilty the lodge shall then prescribe the punishment to be imposed; the vote thereon shall be by ballot in all cases; but for an expulsion the assent of two thirds of the members voting shall be required.

The defendants filed exceptions to the report of the master, which were overruled by the Court, B. M. BOYER, P. J., and the decree made as recommended; whereupon the defendants took this appeal, and assigned that the Court and master erred :

1. In holding that there was irregularity in the appointment of the trial committee.

2. In holding that the rejection of the testimony of Dr. Johnson was an irregularity.

3. In taking jurisdiction of causes of complaint not raised by the plaintiff in his appeals to the tribunals of his own order.

4. In not holding that the judgments of these courts were conclusive.

*Mr. Amos Briggs* (with him *Mr. J. P. Hale Jenkins* and *Mr. Charles Hunsicker*), for the appellants:

Accepting the facts as the master has found them the conclusions he deduces may be reviewed and reversed: Phillips' App., 68 Penn. St. 138; Kutz's App., 100 Idem 75.

The master finds that the irregularity, if any, in the appointment of the fifth member of the committee of March 18, 1882, was expressly waived by the plaintiff, but then concludes that the committee had no power to rule on the competency of the testimony offered, but were bound to take down all that was offered and to report it to the lodge. The written law of the order, however, is expressly otherwise: sec. 3, Art. VIII. of the constitution of the lodge; which makes the committee trial judges and not merely examiners.

1. When the law of procedure is observed, an error in ruling is attached to the ruling and cannot be reviewed but by direct appeal or writ of error to review the ruling itself: Thompson v. White, 4 S. & R. 135; Com. v. LaFitte, 2 S. & R. 105; Walls v. Wilson, 28 Penn. St. 514; Wynn v. Bellas, 34 Idem 160; Wells v. Scott, 1 Miles 125; Williams v. Danziger, 91 Penn. St. 232; Lewis's App., Idem 359.

2. The correctness of the ruling can be reviewed only by an appeal to the forum of the order. The charter of the order is its law, and it is of its very essence that all controversies within the order shall be adjudged within its own forum: Black & White-smiths' Soc. v. Vandyke, 2 Wh. 309; Toram v. Beneficial Soc., 4 Penn. St. 519; Com. v. Beneficial Soc., 8 W. & S. 247; Hopkins v. Marquis of Exeter, L. R., 5 Exch. Div. 63; People v. St. George Soc., 28 Mich. 261; Poultney v. Blackman, 31 Hun 49; Woolsey v. Odd Fellows Lodge, 61

Iowa 492; Fritz v. Muck, 62 How. Pr. N. S. 69; Anacosta Tribe v. Murback, 13 Md. 91 (21 Amer. Dec. 625); Osceola Tribe v. Schmidt, 57 Idem 98.

3. This is the law of common law submissions: Messick v. Ward, 1 Gr. 437; Bowen v. Cooper, 7 W. 311; Benjamin v. Benjamin, 5 W. & S. 562; Speer v. Bidwell, 44 Penn. St. 26; Connor v. Simpson, 104 Idem 440; Neal v. Shields, 2 P. & W. 301; Navigation Co. v. Fenlon, 4 W. & S. 205; Hartupee v. Pittsburgh, 97 Penn. St. 107; Ferdicker v. Guardian Life Ins. Co., 62 N. Y. 392; Pollock v. Sutherland, 25 Gratt. 78; Leech v. Harris, 69 N. C. 532; Buckman v. Ransom, 23 N. J. Eq. 118; Jenkins v. Meagher, 46 Miss. 84; Sabin v. Angell, 44 Vt. 523; Sanborne v. Murphy, 50 N. H. 65; Morse v. Bishop, 55 Vt. 231; Smith v. Kaolin Co., 1 Mo. App. 453; Halstead v. Seaman, 52 How., N. Y. Pr., 415; Snodgrass v. Gavit, 28 Penn. St. 224; Hostetter's App., 92 Idem 132.

4. Honesty and fairness are the tests of the proceedings of these voluntary associations: cases cited in (1), (2), *supra*, and Society v. Com., 52 Penn. St. 131; St. Patrick Ben. Soc. v. McVey, 92 Idem 510; Tuigg v. Treacy, 104 Idem 499; Neal v. Shields, 2 P. & W. 301; Worrilow's App., unreported.

5. Here we have a sentence against the complainant by the highest tribunal of his own order in the last resort, without even an allegation of its irregularity, and that sentence shows that the very grievance complained of by the bill is *in rem judicatum*: Com. v. Ben. Soc., 8 W. & S. 250.

*Mr. N. H. Larzelere* (with him *Mr. M. Gibson*), for the appellee:

This was a case of amotion and disfranchisement; a divestiture of legal rights, the plaintiff's property. The irregularity in the appointment of the committee is sufficient of itself to give jurisdiction and to entitle the plaintiff to restitution of his rights.

1. The committee had no power to reject the testimony of Dr. Johnson. The constitution says, "It shall be the duty, etc." The duty was imperative: Malcom v. Rogers, 5 Cow. 183; City v. Board of Health, Camp. 402; Hogarden v. Raux, 72 N. Y. 583.

2. The principle of the cases is that equity will not reverse

the proceedings of a corporation upon the merits, when acting within the powers granted by the charter; and not that the regularity of the proceedings is not open to inquiry. The fact of the amotion being distinctly shown, the court may judge of its sufficiency, both as to the cause and the form of the proceedings: Com. ex rel. v. The German Society, 15 Penn. St. 251; Green v. The A. M. E. Soc., 1 S. & R. 254; Com. v. Guard. of the Poor, 6 Idem 468; Society v. The Com., 52 Penn. St. 133; Ang. & Ames Corp., 709; Worrilow's App., unreported.

3. The master found that the lodge acted upon the committee's report without hearing a line of the testimony read. Sec. 4, Art. VIII., prescribes that the lodge itself is to determine the case and say whether the accused is guilty or not of the charge preferred. The neglect was an irregularity: Com. v. Guard. of the Poor, 6 S. & R. 473.

4. The plaintiff objected to the whole proceedings from beginning to end. What more could he do? Being represented by a layman, not a lawyer, he was not expected to take formal exceptions and raise demurrers with legal accuracy.

OPINION, MR. JUSTICE GORDON:

We are inclined to think that this case was not properly disposed of in the court below. The learned master, properly apprehending that he must, under the authorities, confine himself to those questions which involved some infraction of the organic law of the society to which the plaintiff belonged, in other words, to some material irregularity in the proceedings which resulted in the complainant's suspension, found two such infractions or irregularities. The first of these is, that in the appointment of the trial committee there was not a strict compliance with the by-laws; but as this irregularity was, as he seems to admit, cured by Rosenberger's appearance before the committee without objection, we cannot understand in what manner it was made to affect the case. The second, that certain testimony, offered on part of the complainant, was ruled out. We give the whole matter in the language of the master, thus: "The only allegation against the regularity of the proceedings before the trial committee was the refusal to hear the testimony of Dr. B. K. Johnson. The official report

of the trial committee shows the following facts, viz., " B. K. Johnson obligated: I am a physician in North Wales, and a graduate in Pennsylvania in 1861; I know Brother I. D. Rosenberger, and have attended him; I first saw him professionally in August, 1881. P. W. G. M. Borie objects to the testimony of Dr. Johnson because the offence charged against the defendant is alleged to have occurred prior to Dr. Johnson's professional connection with him. The question being put before the committee, the objection is sustained. Brother Gearhart, for the defence, objects to the ruling of the committee." It will be observed that what is here alleged is, that the committee made a mistake in ruling out relevant testimony as irrelevant. Admitting that this evidence might have been relevant for some purpose, and ought, therefore, to have been admitted; nevertheless, it does not appear that it was anything more than a mistake in the judgment of the committee, nor does it appear that any complaint was made of this ruling on the subsequent trial in the lodge, of which trial we have the following report by the master: "April 15th, 1882, Rosenberger was present in the lodge meeting, and the report of the committee was considered. The findings of the committee were then made the final judgment of the lodge. A motion to expel was lost, but a motion to suspend Rosenberger for two years was carried by the necessary two thirds." Here, if we are to believe the master, was an appearance, a regular adjudication, and no complaint made of the action of the committee, a clear waiver of the defect complained of. It is said, however, that the evidence taken by the committee was not read. This assertion does not accord with the finding; but no matter; he could have required its reading had he so desired, and if he chose to waive it, that was his own business. But with these matters we have nothing to do, for, as was said by Mr. Chief Justice Gibson, in the case of The Black and White-smiths' Society v. Vandyke, 2 Wh. 308, "into the regularity of these proceedings it is not permitted us to look. The sentence of the society, acting in a judicial capacity and with undoubted jurisdiction of the subject-matter, is not to be questioned collaterally. If the plaintiff has been expelled irregularly, he has a remedy by mandamus to restore him; but neither by mandamus nor by action can the merits of his

expulsion be re-examined. He stands convicted by the sentence of a tribunal of his own choice, which, like an award of arbitrators, concludes him." So, in the case of The Commonwealth v. The German Society, 15 Penn. St. 247, held, per Rogers, justice, citing from 8 W. & S. 251, "the courts entertain a jurisdiction to preserve these tribunals in the line of order and to correct abuses, but they do not inquire into the merits of what has passed *in rem judicatam* in a regular course of proceedings." It thus seems to be settled that neither the mistake made by the trial committee nor by the lodge can be noticed or reviewed by the courts.

"He stands convicted by the sentence of a tribunal of his own choice, which, like an award of arbitrators, concludes him."

The mistake made in the court below was in treating the case as an appeal, whereas it was a collateral action, like a suit brought on a claim which had been finally disposed of by an arbitration at common law.

> The decree of the court below is now reversed and set aside, and the bill dismissed at the costs of the appellee.

DISSENTING OPINION, MR. JUSTICE GREEN:

In the case of Com. *ex rel.* v. The Pike Beneficial Society, 8 W. & S. 247, we said: "The courts entertain a jurisdiction to preserve these tribunals in the line of order, and to correct abuses, but they do not inquire into the merits of what has passed *in rem judicatam* in a regular course of proceedings."

In Com. *ex rel.* Fischer v. The German Society, 15 Penn. St.. 251, we held that in case of the disfranchisement of a corporator the courts entertain jurisdiction to restore him by mandamus where the cause is insufficient or the proceedings irregular. The return to a mandamus to restore a corporator must distinctly set forth all the facts of a motion, that the court may judge of its sufficiency both as to the cause and the form of the proceedings. It is irregular to expel a member without giving him an opportunity of being heard in his defence before the society at large.

In Society v. Meyer, 52 Penn. St. 125, we sustained a demurrer to the return to a mandamus, on the ground that it

did not set forth distinctly and certainly all the facts essential to the conviction of the offence charged, both as to the cause and mode of proceeding. AGNEW, J., in the opinion, assuming that the courts have jurisdiction to inquire into the regularity of the proceedings of the society, which resulted in the amotion of the relator, held the return insufficient because it did not specifically set forth that the relator was found guilty on sufficient evidence. The return did say that the relator was expelled " according to the terms of the constitution and by-laws," and also that " the said relator was then and there, and according to the said constitution and by-laws, tried, and by the unanimous vote of the members present, each one answering separately, pronounced and convicted as guilty of said charges;" but this was held to be insufficient. Judge AGNEW proceeded to say: " If a corporation can shelter itself behind a return which constitutes itself the judge of the regularity of its own proceedings, there is no safety for its members. If it choose to return that a member was tried in due course of law, the facts which constitute the course of procedure are simply inferred because the law requires a certain course, not that these facts are actually averred." He also said another ground of demurrer might have been assigned because the return did not aver that the charge made by the board was in writing and signed by them.

In view of the foregoing and other authorities which might be cited, it is no longer to be questioned in this commonwealth that in proceedings against corporators, within the corporation, whether for suspension or expulsion, the procedure itself must be in conformity with the organic law of the corporation; the cause must be sufficient, the trial and proceedings must be regular, and the proof must be at least adequate in the judgment of the corporation; and in case of a contest in the civil courts that fact must affirmatively appear in the answer or return of the corporation. The power of the courts to give relief where the corporation has violated or disregarded its duties in these respects, has been repeatedly asserted and exercised. It is of course the duty of the member to exhaust the remedies afforded by the constitution and by-laws of his order or association, before resorting to the courts. All of this was done by the plaintiff in this case. He did not file his bill

until the tribunal of last resort within his order had decided finally against him.

The master and the court below have decided in his favor both upon the facts and law. In order to intelligently decide the question before us it is necessary to recur somewhat to the facts of the case which are in some respects of an extraordinary character.

The master has found upon entirely undisputed testimony that the plaintiff became a member of Spring House Lodge, defendant, in 1849, and was a member in good standing until 1881, and that from the time of his initiation up to the time of the master's report, July, 1885, " he has paid all his dues and assessments as they fell due." He further finds that in May, 1881, the plaintiff demanded two weeks benefits by letter, and thereupon in July, 1881, a member preferred charges against him, the substance of which was that he had feigned a sickness which he did not have. A committee appointed to try him upon these charges quickly condemned, and the lodge expelled him, but the Grand Lodge, on appeal, reversed this action and directed a trial on the original charge. At the trial before the new committee the plaintiff offered to prove that the charge preferred against him was false, by the physician who treated him, when upon the trivial objection that the physician had not attended him at the time of his original allegation of sickness, some three or four months previously, his offer of testimony was rejected. The reason given for rejecting this offer was that it was irrelevant. Of course the evidence offered was not irrelevant, and no court would have entertained the objection for an instant. The question which now arises is, was the refusal to hear this testimony an irregularity in the proceedings such as to vitiate the subsequent action of the defendant suspending the plaintiff for two years. That depends upon a consideration of the rights of the plaintiff as a member of the order, as those rights are prescribed in the constitution and by-laws, and of the character of the testimony offered in connection with the charge upon which he was being tried.

So far as his rights are concerned as a member on trial, they are sufficiently defined by the third section of Article VIII. of the constitution, which provides as follows :

" It shall be the duty of the committee to examine the par-

ties, their proofs and witnesses, giving the member charged notice and full opportunity to be present at the examination." There can be no question under this language that a member against whom a charge is made has the right to disprove the charge. If he has not, this constitutional guaranty is nothing but a snare and a delusion. The language is peremptory, explicit and without the slightest ambiguity. It confers in the clearest and most positive manner upon an accused member the right to be heard by himself, his proofs and his witnesses. There is no discretion reserved to the trial committee to reject either proofs or witnesses. They are absolutely bound by the organic law to receive and hear them. In the opinion of the writer, it is not possible to conceive of a more gross or violent deprivation of a sacredly guaranteed right than to refuse to a member the hearing of testimony to disprove an accusation upon which he is on trial. It is almost unnecessary to say that no court could live which would indulge in such practices in the administration of either criminal or civil justice. It is wasted effort to discuss so plain a question. To say of any tribunal clothed with the power to hear and determine accusations against individuals, that it is not an irregularity in its proceedings to deny to the accused the right to prove his innocence by testimony, is to utter an entirely untenable proposition incapable of defence.

But it is said in the present case that the rejection of the proffered testimony was only a mistake of judgment, and therefore the accused is without remedy and must submit to the consequences because his order refuses to correct the mistake. To this conclusion the writer cannot possibly assent.

*First*, because it fails to distinguish between mistakes, which in the true sense of the word "mistake" are trivial and unimportant errors of judgment, and those which are vital, fundamental, reaching to the very heart of the proceeding, or the controversy.

*Secondly*, because the argument necessarily concedes the error of the action of the committee in rejecting the testimony, but condones all its effect by calling it a "mistake," without considering the whole bearing of the effect. Certainly, if the whole testimony offered in defence by the accused in this or any similar proceeding, had been arbitrarily rejected, for the

very purpose of depriving him of the right to be heard at all, such action could not, and would not, be defended when charged as an irregularity, upon the ground that it was a mistake. The injury to the accused would be just as grave, serious and fatal, whether the cause of it is called a mistake or an irregularity. In other words, whether the error in question is to be treated as a mere mistake in judgment or a fatal irregularity in the proceedings, depends upon the real character and effect of the error, and not upon the name that may be given to it. If it accomplishes the deprivation of a grave constitutional right which is inherent in the proceedings of all tribunals, it is necessarily an irregularity of the most serious character. When the character of the action taken in this case is compared with the causes for setting aside the action of the society in the case of Society v. Meyer, 52 Penn. St. 125, the latter dwindles into insignificance.

*Thirdly*, I am not at all able to take the exceedingly lenient view of the action of the trial committee which treats it as a mere mistake of judgment in the decision of a question of evidence. A careful reading and consideration of the master's report and of the facts found by him has impressed me with the conviction that the rejection of the plaintiff's testimony on the trial, proceeded from a desire and a purpose to deprive him of his right to benefits; and this brings me to the second of the suggestions mentioned above as affecting the primary question of the irregularity of the proceedings, to wit, a consideration of the character of the testimony offered in connection with the charge upon which the plaintiff was being tried.

When the case was heard before the master the parties were fully heard upon all their allegations. The master finds upon voluminous testimony that, at the time the charges were preferred, Rosenberger was afflicted with a very serious disease known as *prolapsus ani*, and a general disorder of the blood that caused a peculiar eruption of the skin which was especially painful when any physical labor was attempted. After describing the effect of using croton oil to increase the eruptions, but to relieve the patient, he concludes in reference to the charge made against the plaintiff thus :

"The charge therefore of using it (the oil) from improper motives is not sustained by the evidence. The testimony of

Dr. Johnson, Dr. Slifer and Dr. Moyer as well as that of himself, his wife and several neighbors, is to the effect that at that time he was actually suffering from a chronic disease which prevented him from following his usual avocation. The testimony to the contrary amounts to absolutely nothing to disprove this. I think the charge was entirely false."

This finding of the master is not controverted by the defendant, either in the printed or oral arguments, and it must be taken as an absolute verity, well sustained by ample testimony. It is alleged in the counter statement, and not denied, that the plaintiff was sixty-eight years of age in 1881, and it was found by the master that he had always paid his dues from 1849 to 1885, and, upon the testimony of three physicians, that he had continued to be unable to do any physical labor down to the time their testimony was given. We have then the case of an old, sick, disabled member of this order, who for 35 years had faithfully paid into the treasury of the order all the dues required of him, being at last afflicted with a serious and apparently incurable disease, such as to prevent him from following his usual avocation, preferring his application for benefits to the society which had taken his money for so many years. The right to have these benefits was also guaranteed to him by the eighth article of the constitution. The defendant must not for one moment be regarded as either a religious or a charitable association. Its benefits are sold to those who pay money for them and the right to have them is a contract right, pure and simple. This plaintiff had most fully paid for the benefits he claimed, and if the merits of the case were to be considered as they appear upon this record, he seems to have established an incontestable right to them. But independently of the question of merits the undisputed facts are that almost immediately following his claim for benefits a charge was preferred against him of feigning the sickness upon the ground of which his claim to benefits was made. His only claim at that time, was for the first two weeks benefits and they were refused. Subsequently when it had become apparent that he was likely to continue in the same condition and become a burden the charge of feigning his sickness was preferred against him. It was a most serious charge. It involved not only a breach of his duty as a member, but a high degree of

moral turpitude and a deliberate purpose to defraud the order. Undoubtedly he had the common right of all accused persons to prove the falsity of the charge and his own entire innocence if he could. His judges, his jurors, his accusers and his debtors were one and the same, to wit, the order to which he belonged. It might be supposed that with so many advantages in their favor he would at least be accorded the very small privilege of a fair trial guaranteed to him by the constitution of his order. But it was not to be. When he offered to prove the falsity of the charge preferred against him, by the testimony of a disinterested witness, who had ample knowledge of the facts and was peculiarly qualified by his profession and his actual treatment of the plaintiff's disease, to testify respecting it, he is denied the right to submit his proof, the mouth of his witness is closed, and as a matter of course the case is forthwith decided against him.

The pretext upon which his testimony was rejected is so utterly worthless that it is impossible to credit its sincerity. In rejecting it, a peremptory provision of the constitution of the order was distinctly violated, and the proceedings in this respect were conducted by a positive breach of its terms. The charge which was preferred against the plaintiff has since been conclusively found to be a false charge without any foundation in testimony. If there were the least doubt of the insincerity of the defendant in preferring the charge and in conducting the trial of the plaintiff, that doubt is entirely swept away by the fact that after full knowledge of the plaintiff's actual sickness and the falsity of the charge against him, as furnished by the proceedings in the present case, the defendant still continues in a most persistent effort to escape the performance of its contract duties to the plaintiff. For all these reasons I am not able to believe that when the testimony of Dr. Johnson was rejected it was done for any other purpose than to deliberately defraud the plaintiff of his rights. The preferment of a false charge against an innocent person, and persisting in it when the fact of the falsity is offered to be proved by competent and credible testimony, is so shocking to every sentiment of right and honor that it is impossible to associate it with integrity or honesty of purpose. Entertaining these convictions as I do so earnestly and sincerely, I am

altogether unable to agree with the majority of the court in their disposition of this case, and I am therefore constrained to dissent therefrom. I agree to the other irregularities found by the master and the court, but it is unnecessary to discuss them.

I would affirm the decree of the court below.

MR. JUSTICE TRUNKEY concurred with MR. JUSTICE GREEN.