Gordon et al. *v.* Tomei et al., Appellants.

450

Argued October 21, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Oscar A. Moldawer,* for appellants.

*Abraham Wernick,* with him *Herman Barton Paul,* for appellees.

OPINION BY RHODES, J., April 18, 1941:

Plaintiffs are members of the Musicians Protective Association, Local 77, American Federation of Musicians, an unincorporated association of musicians united for mutual protection through establishment of a minimum scale of prices, the granting of sick and death benefits, and the burial of the dead. The association is a defendant in an equity proceeding brought by plaintiffs wherein they sought injunctive relief against so-called disciplinary measures adopted by defendant association, and damages for loss of employment thereby resulting. After hearing testimony, the chancellor filed an adjudication in favor of plaintiffs. The findings of fact and the conclusions of law made by the chancellor were affirmed by the court in banc, and the decree nisi made final. From the final decree defendants have appealed.

The facts which give a background of the controversy may be summarized from the averments of the amended bill and the answer of the defendant association.

The by-laws of defendant association provide penalties for any deviation from the established scale of prices or any agreement by a member to rebate a part of his wages paid in accordance with the scale. The by-laws also establish a trial board for hearing of complaints against members, and from the decision of that body an appeal lies to the International Executive Board of the American Federation of Musicians, the national organization of which the defendant association is a local unit functioning in Philadelphia. Such an appeal, however, by article XI of the by-laws of the national organization must be filed by the one appealing within thirty days of receipt of notice of the decision of the trial board. The power of the International Executive Board to hear such appeals is derived from various sections of the by-laws of the national organization, incorporated by reference in the by-laws of defendant association.

The executive management of defendant association is reposed in its own executive committee, whose powers and duties are defined in article VII, sections 6 and 8 of its own by-laws.[1]

Plaintiffs were members of an orchestra engaged to perform at the Carmen Theatre from September 4, 1936, to December 3, 1937, excepting, as to two of the plaintiffs, certain lay-off intervals during the summer of 1937. The engagement was agreed upon between the theatre and defendant association in a writing which did not identify any of the persons to be hired other than as members of defendant association, but set their number as "nine musicians and one contracting-leader," and in considerable detail fixed their hours and wages. It then provided: "The contracting-leader must make his individual contract but such contract must be subject to this trade agreement."

The position of "contracting-leader" referred to in this agreement was from September 4, 1936, to July 8, 1937, filled by one Leon Saporeta, who led the orchestra in which plaintiffs played. In May, 1937, all the members of the orchestra, including Saporeta, were charged by the executive committee of defendant association with agreeing to rebate wages to the theatre management. On May 26, 1937, they were tried before

---

[1] Sec. 6. "They shall have power to act in all matters concerning the Local not specifically provided for in the By-Laws, in the interim between meetings of the Local. In no case, however, shall they have such right where the business is not urgent, and can be delayed until the next regular meeting of the Local. All decisions shall be subject to the approval of the Local. The roll call of yeas and nays on all questions shall be made a part of the records of the Committee."

Sec. 8. "They shall investigate all charges against or complaints of any member or members, and shall have the power to interrogate and refer to the Trial Board any and all matter for trial evolving from such investigation, with a copy of the minutes pertaining to such cases, including all testimony and papers."

the trial board of defendant association. Plaintiffs were acquitted, but Saporeta and the other members of the orchestra were convicted and fined. On June 4, 1937, however, the executive committee filed the same charges again against two of the plaintiffs, Gordon and Schatz. On the same date, June 4, 1937, the executive committee adopted a resolution that "the entire Carmen Theatre Orchestra be withdrawn from the Carmen Theatre as of July 8, 1937," and a copy of this resolution was sent to the owner of the theatre, Saporeta, and every musician in the orchestra, including plaintiffs.

The sections of the by-laws of defendant association which bear upon the authority of the executive committee to take this action are sections 16 (a) and 16 (b) of article XVIII.[2]

The hearing on the renewed charges before the trial board was held on June 9, 1937, and the result was again an acquittal of the two plaintiffs. On June 14, 1937, plaintiffs perfected an appeal to the International Executive Board from the resolution of the executive committee withdrawing them from the theatre. It

---

[2] Section 16 (a). "Any contractor, who is found guilty of obtaining an engagement below the Scale of Prices or in any other manner which violates the By-Laws, may be forbidden by the Executive Committee to contract with or perform for the same management or at the same place for a period not exceeding one year. This procedure may be followed only if the Trial Board, in its decision, refers the case to the Executive Committee for such action. This is in addition to any other penalties imposed by the Trial Board."

Section 16 (b). "Any member who is found guilty of evading the Price List, may, in addition to other fines imposed, be forbidden by the Executive Committee to play for the same contractor or the same management for a period not exceeding one year. This procedure may be followed only if the Trial Board, in its decision, refers the case to the Executive Committee for such action. The contractor likewise may be forbidden to use the member for such period."

was not until July 16, 1937, that the executive committee of defendant association filed its appeal to the International Executive Board from the finding of the trial board acquitting plaintiffs. The International Executive Board on December 22, 1937, denied plaintiffs' appeals from the resolution ending the engagement of the orchestra, and on January 20, 1938, reversed the trial board's acquittal of plaintiffs, found them guilty of the charges, imposed fines of $100 on each, and ordered in default of payment within thirty days erasure of their names from the membership rolls of defendant association.

It is admitted that plaintiffs had exhausted all remedies available within the association before they filed their bill in equity. *Lodge No. 19, Svete Ime Isusovo v. Svi Sveti et al.*, 323 Pa. 292, 294, 185 A. 650.

The bill prayed, inter alia, the court to enjoin defendants from carrying out the order of the International Executive Board, to declare void the board's reversal of their acquittal, to decree plaintiffs members of defendant association in good standing, and to award plaintiffs damages for loss of employment.

The bill included various other complaints of defendants' conduct, which were, at the hearing before the chancellor, withdrawn, and it was there stated of record that the issue was restricted to the tardiness or timeliness of the executive committee's appeal to the International Executive Board from plaintiffs' acquittal by the trial board. On this issue the secretary of defendant association, A. Rex Riccardi, testified that on July 2, 1937, he wrote to the secretary of the national organization, and requested an extension of time for the filing of an answer to plaintiffs' appeal of June 14 from the order of the executive committee ending the engagement at the Carmen Theatre. He also testified that on July 6 he wrote the same individual

a letter, which is printed below.[3]   This letter is unexplained unless it refers to an oral conference between members of the local executive committee and the International Executive Board at a convention in Tampa, Florida, during the week of June 13, 1937, in which was discussed the intention of the executive committee to appeal from the action of the trial board in acquitting plaintiffs and in not imposing heavier fines on the members convicted, together with the advisability of combining these appeals with answers to appeals if taken by the members.   The witness testified that he was advised by the International Executive Board to adopt such a combined procedure, and "subsequently through telephonic communications when we met with the secretary again" that this procedure could be made to include also answers to appeals of plaintiffs, by that time filed, from the order withdrawing the orchestra from the theatre.

Although nothing appears specifically in answer to the inquiry of July 6, on July 16, the executive committee sent the national secretary one written argument in support of its own appeals, both from the acquittal of plaintiffs and the trial board's failure to fine more heavily those found guilty, and in answer to the appeals by the members from their conviction and to the appeals by plaintiffs from the withdrawal order.   Defendants' answer admits the averments of the bill that the appeals of all the plaintiffs were filed on June 14, 1937.

In his adjudication the chancellor made various findings of fact, among them the following: "The issue before the court concerns the tardiness or non-tardiness of the appeal to the International Executive Board taken by the defendant local's executive committee

---

[3] "To date I have not as yet heard from you as to what disposition you have made on my request regarding the Carmen Theatre appeal—namely, whether our appeal from the Trial Board decision would be sufficient and be accepted as an answer to the appeal made by the members from that decision."

from the decision of its trial board, all other issues raised by the amended bill of complaint and the defendants' answer thereto having been resolved in favor of defendants by agreement." This was defendants' first request for finding of fact, as qualified. He also found as facts that the executive committee of defendant association had notice of the acquittals more than thirty days prior to its appeals therefrom; and that it did not perfect an appeal until July 16, 1937; that it adopted a resolution withdrawing the entire orchestra (including plaintiffs) from the Carmen Theatre; that the by-laws of defendant association authorized such a step only if the trial board had referred the case to the executive committee; and that no reference of the cases of plaintiffs had been made by the trial board. As a matter of law he concluded that the appeals were tardy; that the International Executive Board was without jurisdiction; and that its orders fining plaintiffs and directing their names to be stricken from the membership rolls in default of payment were void. He held that plaintiffs were entitled to wages lost through interference with their employment, and ordered them compensated by defendant association, and enjoined defendants from enforcing the fines and from striking their names from the membership list of defendant association.

Defendants' exceptions to the findings and conclusions of the chancellor having been dismissed by the court in banc, the decree nisi was made final.

Defendants having appealed, submit twenty-six assignments of error. These assignments raise the questions whether the court below erred (1) in concluding the appeals were tardy and the action of the International Executive Board void; (2) in holding defendant association liable to plaintiffs for wages lost by its interference with their employment, regardless of their guilt or innocence; (3) in holding plaintiffs' loss established without testimony as to what other employ-

ment they had or might have secured during the period of their original engagements.

(1) Article XI of the by-laws of the American Federation of Musicians, the national organization, provides: "An appeal must be filed with the secretary of the American Federation of Musicians within thirty days of the time that the Local advised appellant of the decision in the case."

The by-laws of a corporation have been called "its private statutes for its own government, unless contrary to the laws of the land": *Bagley v. Reno Oil Co.*, 201 Pa. 78, at page 80, 50 A. 760, at page 761. Those of an unincorporated association have been said to be the contract of association of its members. *Leatherman et al. v. Wolf et al.*, 240 Pa. 557, 564, 88 A. 17. In *Manning v. Klein et al.*, 1 Pa. Superior Ct. 210, at page 216, this court said: "It is undoubtedly true as a general proposition that the constitution and by-laws of a voluntary association constitute the compact which binds its members together and the law by which they are to be governed." In *Hayes v. German Beneficial Union*, 35 Pa. Superior Ct. 142, at page 148, we adopted the following definition: " 'A by-law is a rule or law adopted by a corporation or association for the regulation of its own action and concerns, and of the rights and duties of its members among themselves.' Am. & Eng. Ency. of Law, vol. 5, p. 87. 'This term (by-law) has a peculiar and limited signification, being used to designate the orders and regulations which a corporation, as one of its legal incidents, has power to make, and which is usually exercised to regulate its own action and concerns, and the rights and duties of its members amongst themselves.' " Also in that case we said (p. 149): "Again the by-laws, rules and regulations of a corporation or society are essentially legislative in their character."

It is one of the recognized standards of statutory construction that the word "must" ordinarily is used

in a mandatory or obligatory sense. There is no apparent reason why the term should not be given this interpretation in the present instance, and in our judgment the chancellor did not err in considering the local executive committee originally to be under a strict obligation to perfect its appeal within the time fixed in the by-laws. The testimony which we have above summarized was sufficient to justify the chancellor's finding of fact that the executive committee did nothing to discharge this obligation effectively until July 16, 1937, more than thirty days after notice of the action of the trial board.

It is urged that the thirty-day limitation for appeal provided in the by-laws was relaxed or suspended (a) by the plaintiffs' failure to object to the International Executive Board's entertaining the tardy appeal, or (b) by the International Executive Board itself under its authority to "prescribe and change the method and procedure for any trial or hearing." (Article I, §6B, By-Laws, American Federation of Musicians.) Defendants refer to a number of authorities from other jurisdictions holding it possible to waive various protections afforded members of unincorporated associations by their by-laws. By acquiescence and participation in trial, members have been held to have waived a constitutional provision that the charge against the accused be made in writing (*Clark v. Morgan et al.*, 271 Mass. 164, 171 N. E. 278); a provision that he receive a written copy of the charge (*McConville v. Milk Wagon Drivers' Union of San Francisco et al.*, 106 Cal. App. 696, 289 P. 852); a provision that he be informed of charges before hearing (*Williamson v. Randolph*, 48 Misc. Rep. 96, 96 N. Y. S. 644). The purpose of such provisions, which is to provide the accused with time and information sufficient to prepare a defense, may fairly be understood to be met by his attendance at and participation in a trial without claiming the protection; but these conclusions cannot be extended to confirm the

existence in an appellate body of a jurisdiction over a controversy which it was not for the plaintiffs alone, but only for the entire membership of the association, to confer.

In *Weiss et al. v. Musical Mutual Protective Union et al.*, 189 Pa. 446, 42 A. 118, union members met to discuss affiliation with other labor groups, thus incurring the wrath of their own union officers, who secured passage of a resolution that the board of directors investigate the activities of plaintiffs, summon witnesses, and try the plaintiffs on charges of disloyalty. The plaintiffs were expelled as a result, but in an equity proceeding were ordered reinstated. The resolution making the directors at once prosecutors and judges of the matter in dispute was held illegal, and to the contention that this had been acquiesced in by plaintiffs' presence at the hearing and failure to object, the Supreme Court said (p. 452) : "This, however, does not bind them to an illegal resolution and by-law, if they elect to raise the question of its illegality subsequently."

*Appeal of Sperry et al.*, 116 Pa. 391, 9 A. 478, cited by defendants, is not in conflict with the principle thus announced. In that case a trial committee sitting on charges that the plaintiff had made a fraudulent claim for sick benefits was held to have erred in a ruling on the admissibility of the testimony of plaintiff's physician, but when the committee's report was submitted to the full membership, and the plaintiff stood trial before that body, he did not press his objection to the ruling. The case stands for no more than the power of any litigant to submit to error in a ruling upon evidence.

In *Lodge No. 19, Svete Ime Isusovo v. Svi Sveti et al.*, supra, p. 294, it was recognized that an adjudication by the highest tribunal of a society was decisive of the members' rights, once it had been determined that the laws of the society had been strictly complied with, and that the officers acted reasonably and in good faith.

It is essential that the legal position of members of an association in relation to intra-organization tribunals be clearly recognized. The by-laws being a contract among the members, quasi judicial bodies, as well as the administrative officers of the association, are the agents of the entire membership, under authority designated by and restricted in the contract of membership, to wit, the by-laws. As said in *Leatherman et al. v. Wolf et al.*, supra, 240 Pa. 557, at page 564, 88 A. 17, at page 20, in the adjudication of the court below which was adopted by the Supreme Court: "As the consent of all parties to a contract is essential to its modification, so, in the absence of express provision to the contrary, the by-laws of such a society which set forth the terms upon which its members have agreed to become associated, cannot be altered or amended without the consent of all of them."

We are unable to conclude therefore that by mere inaction the plaintiffs in the present case deprived themselves of a restriction upon the authority delegated their constituted officers by a plain provision of their fundamental contract with their fellow members.

For the same reason a conclusion that the International Executive Board itself could dispense with the restriction on its own authority cannot be sustained. Although it has been held that a court has power to suspend its own rules for the relief of hardship (*Lance v. Bonnell*, 105 Pa. 46), courts have been held powerless to extend statutory periods of limitation for appeal. *Schrenkeisen et al. v. Kishbaugh et al.*, 162 Pa. 45, 29 A. 284; *Singer v. Delaware, Lackawanna & Western Railroad Co.*, 254 Pa. 502, 98 A. 1059; *Meadville Telephone Co. v. Shafer*, 94 Pa. Superior Ct. 246; *Marcus v. Cohen et al.*, 94 Pa. Superior Ct. 383; *Commonwealth, Department of Public Instruction, v. Emerson C. Custis Co., et al.*, 139 Pa. Superior Ct. 22, 10 A. 2d 850.

Considering the matter from another angle, it would seem logical that a body to which an appeal lies can

have no control over it until the appeal is perfected, and cannot absolve a suitor from his failure to invoke its authority during the period prescribed for so doing. The section of the by-laws, article XI (American Federation of Musicians), which authorizes appeals to the International Executive Board does not in any way suggest that the board is empowered to extend the period for taking that step; in fact, by contrast with the language of a later sentence of the same section fixing the time allowed for answers to appeals, "ten days to make answer thereto, unless an extension of time in which to reply is granted," it suggests the contrary. We find no support to defendants' position in the section of the by-laws which authorizes the International Executive Board to "prescribe and change the method and procedure for any trial or hearing," although it may be conceded that there is authority that a limitation of action may be within the meaning of the term "procedure." See *Rosenzweig v. Heller,* 302 Pa. 279, 153 A. 346; *DeJoseph v. Standard Steel Car Co. et al.,* 99 Pa. Superior Ct. 497; *Marchuk v. Pittsburgh Terminal Coal Corp.,* 106 Pa. Superior Ct. 249, 161 A. 771; *Seneca v. Yale & Towne Mfg. Co. et al.,* 142 Pa. Superior Ct. 470, 16 A. 2d 754. This power of the board conferred by article I, section 6B, of the by-laws does not overcome the difficulty of there being no trial or hearing before it in which procedure could be changed until in compliance with the by-laws an appeal had reached it.

In *Hemphill v. Enterprise Lodge No. 75,* 66 Pa. Superior Ct. 134, at page 141, we said: "When it is proposed to expel a member so situated it is necessary that compliance with the law which the members have ordained be observed. It is the rule that to support an expulsion all the facts essential to the conviction both as to the cause of disfranchisement and the mode of proceeding must be made to appear."

In *Manning v. Klein et al.,* supra, 1 Pa. Superior

Ct. 210, at page 218, we said: "It is not a light matter to be deprived of such privileges and courts will carefully scan the steps by which such a conclusion is reached."

The finding and conclusion of the chancellor that the appeal to the International Executive Board by the local executive committee from the acquittals of plaintiffs was tardy, therefore void, and insufficient as a foundation for its finding them guilty and imposing penalties, are fully supported and justified by the record.

(2) The next question for review is the correctness of the conclusion that defendant association was liable in damages to plaintiffs for terminating their employment at the Carmen Theatre by the resolution of its executive committee on June 4, 1937.

The statement of record at the hearing before the chancellor that the issue was solely the tardiness or non-tardiness of the appeal from the acquittals of plaintiffs by the trial board is made the basis of an argument by defendants' counsel that the permissibility of the resolution withdrawing the entire orchestra from the theatre was excluded from the consideration of the court below. We are not convinced that this was intended or that such was the fact. From the adjudication filed the chancellor would not seem to have understood the statement to have this effect. Neither from the record would defendants' counsel, since he proceeded to introduce testimony concerning the resolution, and referred to its adoption in numerous requests for findings of fact. But the contention is now made that even if the propriety of the resolution under the by-laws was before the court, that question was independent of determination of the tardiness of the appeals and plaintiffs consequently and finally established innocence of the charges against them. Our examination of the record leads us to the conclusion that it does not permit the inference that the resolution was independent of plaintiffs' guilt or innocence in the minds of the mem-

bers of the local executive committee. Speaking of the date (June 4, 1937) on which the resolution was passed and renewed charges were filed against the two plaintiffs, the secretary of defendant association, Riccardi, said: "The Executive Board felt reasonably sure [plaintiffs] were also in collusion with the employer and entitled to appeal to the International Executive Board insofar as their not being found guilty was concerned." This witness also testified: "Q. Now, if you had an appeal pending before the International Board, why did you file charges the second time on June 4th and have a second trial against two of the men on June 9th? A. Because we felt reasonably sure that the men were equally as guilty as the ones that were found guilty."

There was evidence, it is true, of a distinction between the plaintiffs and the members found guilty in the notices sent them by defendant association, plaintiffs being advised only that the orchestra had been withdrawn from the theatre. Theoretically this may have left them free to seek employment with a new "contracting-leader," while the others were forbidden to play for the same management, or for Saporeta, or at the same place for a year. However, there was no distinction made in the notice of the resolution sent the theatre, or in the resolution itself, even though admittedly the trial board's reference of the proceedings to the executive committee was only as to the convictions of the others. There was also testimony that the president of defendant association, on being asked why the plaintiff Gordon, who had been found not guilty, was included in the removal order, answered that he was guilty, and that there was no reason why he should not have been found so. The plaintiff Gordon testified that either the secretary or the president of defendant association insisted that he was guilty, and told him that he would keep him out of the theatre if he could.

On this view of the testimony, the refusal of defend-

464

ants' request for a finding of fact that the resolution of June 4, 1937, was independent of the verdicts, and the chancellor's finding that no reference had been made to the executive committee of any further action respecting plaintiffs, appear equally correct.

We may assume that if Saporeta were in fact the employer of plaintiffs and the executive committee did not exceed its authority in forbidding his continuance of the engagement, plaintiffs would have suffered no actionable wrong, and under their contract of membership their position, however distressing, would be beyond remedy. This is the effect of *O'Keefe et al. v. Local 463 of United Association of Plumbers and Gasfitters of the United States and Canada et al.*, 277 N. Y. 300, 14 N. E. 2d 77, 117 A. L. R. 817. If, however, plaintiffs' actual employer was not Saporeta but the theatre owner, the executive committee of defendant association in sending the theatre notice of termination of plaintiffs' engagement would be committing an interference with an employment outside its authority under the by-laws, there having been no requisite reference to it by the trial board of further action respecting plaintiffs after acquittal. Under certain circumstances such interference has been held actionable. The chancellor found that Saporeta was an intermediary, and that plaintiffs were employed by the theatre. This finding was not without support in the evidence. It does not appear in the record how Saporeta came to be the "contracting-leader" referred to in the original agreement between defendant association and the theatre. It does appear, however, that his successor was selected by defendant association. There was testimony that he was appointed by the executive committee under authority vested by the membership at large. It was testified that the contractor and the theatre executed a contract in addition to that between the theatre and defendant association, but it was not produced. The contract between defendant association and the theatre was itself very definite,

and covered in detail wages, hours, and terms of service. The members of the orchestra were not therein identified by name, but were identified as members of the association which was a party to the agreement. The executive committee apparently had the absolute power to designate any "contracting-leader" to fill Saporeta's place as a fulfillment of the obligation under that same agreement. The legal relation of the theatre and defendant association seems clearly that of parties agreeing upon the supply of labor, and the relation of the theatre and the members of the orchestra that of employer and employee. It is impossible from the record before us to say that Saporeta was the employer of the orchestra; there was no evidence of a single instance in which he controlled the performance of their duties except in conducting the orchestra, while by article XVIII, sections 8 and 9, of the by-laws of defendant association he was without power to discharge any one of them except for good cause in the judgment of the trial board. This analysis of the relative positions of the theatre owner, defendant association, and the members of the orchestra is admittedly not the one arrived at by the executive committee in its deliberations upon the rights of the various persons concerned. The inclination of the courts to sustain an association's interpretation of its by-laws and to overlook trifling informalities in its proceedings cannot be extended to put the power of the courts at the mercy of the association. Their surveillance of controversies within such bodies, at least where property rights are involved, has long been exercised. See *Heasley et al. v. Operative Plasterers' and Cement Finishers' International Ass'n et al.*, 324 Pa. 257, 260, 188 A. 206; *Manning v. Klein et al.*, supra; *Gardner et al. v. Newbert et al.*, 74 Ind. App. 183, 128 N. E. 704; *Froelich v. Musicians Mutual Benefit Ass'n*, 93 Mo. App. 383.

In *Heasley et al. v. Operative Plasterers' and Cement Finishers' International Ass'n et al.*, supra, 324 Pa. 257,

at page 259, 188 A. 206, at page 207, in an opinion by Mr. Justice Stern, our Supreme Court said: "That the court of equity had jurisdiction of the cause of action admits of no question. The Act of June 16, 1836, P. L. 784, section 13, paragraph 5, gives the courts of common pleas 'the jurisdiction and powers of a court of chancery, so far as relates to—The supervision and control of all ...... unincorporated societies or associations ......' It is true that, before such power is exercised, it must be shown that a right of property is involved: *Kearns v. Howley,* 188 Pa. 116, 120 [41 A. 273]; *Hutchinson v. Goshorn,* 256 Pa. 69, 71 [100 A. 586]; *Kenneck v. Pennock,* 305 Pa. 288, 290 [157 A. 613]; *Spayd v. Ringing Rock Lodge,* 74 Pa. Superior Ct. 139, 141-2."

The courts in disputes over matters of fundamental rights must make their own interpretation of the by-laws of an association and the legal relations of the members. In *Manning v. Klein et al.,* supra, the plaintiff was a member of a master barbers' union, and was expelled for informing against his fellow members for violations of the Act of 1794 in keeping their shops open on Sunday. The plaintiff was the vice-president of a "Sunday Closing Association," and the union found his action was in good faith for conscientious reasons, but nevertheless expelled him as guilty of conduct tending to the injury of a fellow member, forbidden by the constitution. Despite this interpretation of the constitution by the union, the court below interpreted "injury" to mean "the unlawful infringement or privation of rights," and ordered his reinstatement. The judgment was affirmed by this court.

In *Wiggin v. Knights of Pythias,* 31 F. 122, the by-laws of the order provided that life insurance of a member whose dues were in arrears six months was to be voided. Dues were assessed for two terms, ending at the last meeting of June and December, respectively, and might be paid at any time during the term, but

payment was required at the end of the term only. Wiggin died in October, leaving unpaid $4 of his dues for the first term of that year, and the question arose whether he was not six months in arrears. The order refused to pay his insurance, and there was a judgment for the plaintiff in the court below. The Circuit Court for the Western District of Tennessee affirmed the judgment in language which is, in part, as follows (p. 124) : "...... benevolent associations or fraternities, not more than other parties to contracts, cannot be allowed to construe the words they use in making agreements otherwise than according to their plain and unambiguous meaning, in the English language they employ, whether of the words of the contract itself or of the rules and regulations which become, by the principle they insist on, embodied in the contract as a part of it. They cannot be permitted to interpret the contract as they please, and become their own judges of what they mean by the use of the words employed that have either a technical or well-defined signification, known of all men who use the language."

We think that plaintiffs' right to recover from defendant association for its executive committee's interference with the relation of employer and employee existing between them and the Carmen Theatre must under all the facts be sustained. The right to freedom from wrongful interference with one's employment has been recognized in many decisions in the appellate courts of this state and of the United States Supreme Court. *Erdman et al. v. Mitchell et al.*, 207 Pa. 79, 56 A. 327; *Caskie v. Philadelphia Rapid Transit Co.*, 321 Pa. 157, 184 A. 17; *Mische et al. v. Kaminski et al.*, 127 Pa. Superior Ct. 66, 193 A. 410; *Dorrington et al. v. Manning et al.*, 135 Pa. Superior Ct. 194, 4 A. 2d 886; *Truax et al. v. Raich*, 239 U. S. 33, 60 L. Ed. 131; *Hitchman Coal & Coke Co. v. Mitchell et al.*, 245 U. S. 229, 62 L. Ed. 260.

The element of conduct essential for recovery in such

cases is malice, which has been held to be "the intentional doing of a wrongful act without legal or social justification": *Eddyside Co. v. Seibel et al.,* 142 Pa. Superior Ct. 174, at page 181, 15 A. 2d 691, at page 695. No legal or social justification for the conduct of defendants appears in the present case, and there is also affirmative evidence of actual malice toward plaintiffs by one of the individual defendants, the president of defendant association and a member of the executive committee, in his insistence on the guilt of plaintiffs in the face of their acquittal, and his announced intention to keep them out of the theatre if he could. It may also be noted that the manager of the theatre particularly asked defendant association for its consent to his retaining the three plaintiffs, but this was refused. Notwithstanding the apparently absolute power that the executive committee had to designate to the "contracting-leader," there is no explanation of its failure to make his appointment conditional upon including plaintiffs in his orchestra except an animus toward them.

(3) The chancellor had before him every element necessary to permit plaintiffs the recovery of damages as prayed for, and the only error appearing in his adjudication is in the amount of damages awarded the plaintiff Tipton. The principle is well established that in an action to recover damages for wrongful discharge from employment the defense that the claimant earned or could have earned a livelihood during the term of his discharge is an affirmative one, and the burden of proof rests upon the defendant. *King & Graham v. Steiren,* 44 Pa. 99; *Emery et al. v. Steckel,* 126 Pa. 171, 17 A. 601; *Coates v. Allegheny Steel Co.,* 234 Pa. 199, 83 A. 77; *Babayan v. Reed et al.,* 257 Pa. 206, 101 A. 339; *Heyer v. Cunningham Piano Co.,* 6 Pa. Superior Ct. 504; *Speier v. Locust Laundry,* 63 Pa. Superior Ct. 99; *Seiler v. New York Ice Cream & Creameries, Inc.,* 71 Pa. Superior Ct. 32. As to none of the plaintiffs did the defendants in the present case undertake to dis-

charge this burden. The plaintiff Gordon was not even questioned on the point on cross-examination. The plaintiff Schatz testified, on cross-examination: "Q. Did you do any work during that time? A. Nothing that amounted to anything. I don't remember." The plaintiff Tipton, however, admitted earnings in other employment, which he estimated at $250, during the period covered by his contract. This admission requires a reduction of the award in his favor by that amount, since his loss cannot reasonably be calculated to include that sum. It is correctly pointed out by defendants that any recovery in the present action by plaintiffs is not for wages but for damages. In *Foringer v. New Kensington Stone Co.*, 223 Pa. 425, 72 A. 797, our Supreme Court held that although the burden of proving the plaintiff had opportunities at other employment was upon defendant, the plaintiff's admission was the equivalent of defendant's proof. The Supreme Court there said (p. 429): " . . . . . . as to the further earnings plaintiff might have made, he is excused on ground that the burden of proof was upon the defendants. That the general rule is so is indisputable; but it should not apply where it is admitted by the plaintiff not merely that he might have found other employment but that he actually did so; and though it was apparently more profitable than that with appellants, he left it voluntarily for a reason which hardly seems to be sufficient. . . . . . . We think the admission of the plaintiff that he secured other employment, which he might have retained, should have been submitted to the jury with the same force and effect as though it had been proven by the defendant."

Defendants in their brief attempt to raise an additional question which is not covered by the statement of questions involved or by any assignment of error. It is that the American Federation of Musicians, the national organization, should have been joined in these proceedings as an indispensable party. Defendants

470

refer to the docket entries printed in the record of the case as indicating the raising of this question in the court below, but the only entry suggestive of any such step is the filing and dismissal of preliminary objections to the bill. None of defendants' assignments of error are directed to this ruling.

But even if the point were properly raised, there is grave doubt that it could be maintained under the authorities cited in its support. In *Fineman v. Cutler et ux.*, 273 Pa. 189, at page 193, 116 A. 819, at page 820, the Supreme Court gave the following definition: " 'A party is indispensable when he has such an interest that a final decree cannot be made without affecting it or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience.' " The interest of the American Federation of Musicians in the present controversy does not appear to be so extensive as to answer that description.

That part of the decree awarding damages to George W. Tipton in the amount of $663 is modified by a reduction of $250 to $413.

The decree and judgments, as modified, are affirmed, at the cost of appellants.