Thaddeus A. Manning v. Henry Klein et al., Officers and members of the Master Barbers' Protective Beneficial Association, Appellants.

*Unincorporated association—Visitorial jurisdiction of the courts.*

The appellate courts and the several courts of common pleas under the act of June 13, 1836, P. L. 784, have jurisdiction and powers of a court of chancery so far as relates to the supervision and control of all corporations other than those of a municipal character and also of unincorporated associations and partnerships.

*Right of association to expel a member.*

An association has the right to expel a member under its by-laws if such right is properly exercised. Such exercise is reviewable by the court, and if improperly exercised or if property rights are illegally divested the action of the association will be reversed and the member reinstated.

*Expulsion of member, when improper—Sunday law.*

A member of an unincorporated Barbers' Protective Beneficial Association cannot be expelled from the association on the ground of "being guilty of conduct tending to the injury of his fellows," on evidence that he caused certain members to be arrested for violation of the Sunday law.

Argued Dec. 17, 1895. Appeal No. 28, Nov. T., 1895, on decree of C. P. No. 1, Phila. County, Dec. T., 1891, No. 543, dismissing exceptions to master's report and entering decree as prayed for. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed.

Exceptions to master's report recommending that the prayer of plaintiff's bill be granted and decree of C. P. No. 1, dismissing said exceptions and granting prayer of the bill. Before BIDDLE, J.

It appeared from the record that plaintiff filed his bill against the members of an unincorporated society, known as the Master Barbers' Protective Beneficial Association, to restore him as member thereof. The bill set out that plaintiff from time of becoming a member had paid all his dues and at all times properly conducted himself as a member thereof; that on July 20, 1891, he was unjustly and illegally expelled from the association. The answer averred that under the 16th article of the constitution (which is set out in the opinion of the Supe-

rior Court) he had been guilty of conduct which had subjected him to expulsion and that he had been legally expelled after due trial. The case was referred to George T. Deiss as master, before whom testimony was taken. He filed a report recommending that the prayer of the bill be granted. Exceptions were filed to the master's report which were dismissed in an opinion by BIDDLE, J. Reported in 4 Dist. Rep. 599.

*Errors assigned* were, (1, 2, 3) in entering decree in favor of plaintiff; in not dismissing the appeal for want of equity jurisdiction; in not dismissing the bill for want of proof to sustain it as against the answer of defendant; (4) in restoring the plaintiff as a member of the association.

*Thomas R. Elcock,* for appellants.—The answer was uncontradicted and should be sustained: Rowley's Appeal, 115 Pa. 150; Lance v. Coal Co., 40 L. I. 278; Cambell v. Patterson, 95 Pa. 447; Hartley's Appeal, 103 Pa. 203. There is no finding by the master that the proceedings to expel were wanting in any legal formality, nor does the court below reverse or affirm upon any such ground. The court has not visitorial power in the case of the by-laws of an unincorporated association and cannot determine whether they are reasonable or unreasonable: 2 Am. & Eng. Ency. of Law, 708; Kehlenbeck v. Logeman, 10 Daly, 447; Sperry's Appeal, 116 Pa. 391; Com. v. Union League, 135 Pa. 301.

*Lewis D. Vail, Theodore Barrett* with him, for appellee.— The supervision and control of an incorporated association is expressly given by the act of June 16, 1836, P. L. 784; Thomas v. Elmaker, Parson's Eq. Cas. 98; Baseball Assn. v. Simons, 42 L. I. 521: Foley v. Tovey, 54 Pa. 190. That a mandamus will not lie has been frequently held: Wolf v. United Daughters of America, 1 Phila. 374; Wolf v. Commonwealth, 64 Pa. 252. The jurisdiction of the court is clearly in equity. Disfranchisement relates to forfeiture of member's rights of property in incorporation: Evans v. Club, 50 Pa. 117. A by-law imposing forfeiture is void in the absence of a statute expressly conferring power: Phillips v. Allen, 41 Pa. 481; Leech v. Harris, 2 Brews. 571. Whether a by-law is reason

212    MANNING *v.* KLEIN et al., Appellants.

Arguments—Opinion of the Court.    [1 Super. Ct.

able or not is a question for the court solely : Hibernia Co. v. Harrison, 93 Pa. 269. · A by-law that attempts to oust the jurisdiction of the court is void : Sweeney v. Beneficial Soc., 14 W. N. C. 466. But even granting the validity of the by-law and constitution to expel in proper case, there is not sufficient cause for expulsion : Splane v. Commonwealth, 35 P. L. J. 256 ; Johnston v. Com., 22 Pa. 102. The proceeding was irregular : Society v. Com., 52 Pa. 125 ; Com. v. Guardian of the Poor, 6 S. & R. 475. Plaintiff's evidence was sufficient when supported by the charter : Rowley's Appeal, 115 Pa. 150 ; Eaton's Appeal, 66 Pa. 483. The rule that the findings of a master on questions of fact approved by the court below will not be set aside but for plain error is too well settled in equity practice to need citation.

OPINION BY BEAVER, J., January 20, 1896 :

Thaddeus A. Manning, on the 1st of January, 1884, became a member of the Master Barbers' Protective Beneficial Association of Philadelphia, an unincorporated organization whose principal objects, as declared in its constitution, were as follows : " The objects of this association shall be to protect its members in the *proper* and *legitimate* transaction of their business, to propose and submit plans for its elevation and the relief of its members during sickness or such other disability as shall prevent them from attending to their business, and to make provision in the event of death." In order to enable the association to meet its obligations to its members for sick or accident benefits and to make provision in the event of their death, regular dues were levied and collected from the members. These had been regularly paid by Manning during his membership in the association.

By the 16th article of the constitution of the above named association, it is provided :

" Section 1. Any member may be expelled from this association for breach of its constitution, by-laws and rules of order, or for conduct tending to the injury of any of its fellow-members or of the association.

" Section 2. But no one shall be expelled, until after a fair trial and opportunity to be heard in defense nor without a two-thirds vote of the members present.

" Section. 3. Any member feeling aggrieved at the action of another member and desiring to prefer charges against him can do it in writing at a stated meeting, and said charges will be immediately referred to a committee of five members for investigation, who shall impartially try the cause referred to them and report the result of the trial at the next stated meeting."

It seems that Manning, prior to April, 1891, joined another organization, known as " The Sunday Closing Association," which had for its object, among others, the closing of all barber shops on Sunday, of which he was vice president.   On or about the 27th of April, 1891, he made information for a violation of the provisions of the first section of the act of assembly approved the 22d day of April, A. D. 1794, entitled " An act for the prevention of vice and immorality, etc., by doing or performing worldly employment or business on the Lord's Day commonly called Sunday," namely, by carrying on business as a barber shop, by shaving, hair cutting or hair dressing, etc., before magistrate Milligan, upon which warrants were issued for the arrest of William R. Waldman, Michael Anton, William Streich, William Zaun and Charles F. Wiegner who were also members of the Master Barbers' Protective Beneficial Association.   The parties thus arrested on the 20th of May, 1891, preferred charges against Manning for conduct tending to the injury of his fellow members in the association, in violation of article 16, section 1 of the by-laws, the specification of the acts which constituted the said violation being as follows: " The said Thaddeus H. Manning personally appeared before magistrate Milligan between the 27th and 29th of April last, and swore out warrants for the arrest of these, our fellow members: Michael Anton, Charles Wiegner, William R. Waldman, William Zaun and William Striech," which charge and specification was signed by the men whose names are therein contained.

In accordance with the by-laws, this charge was referred to a committee, with directions " to give the accused member a fair and impartial trial and report the result at the next meeting."   The committee proceeded to hear the case, reporting as the result of it that Manning had been summoned before them, " answered all questions put before him to the satisfaction of the committee and in conclusion stated he is very sorry that this charge is brought against him, that he has absolutely no

malice or ill feeling against any member of the association, not even those who preferred the charges against him. He admitted that he had always been treated with the utmost courtesy by the association and its members. The stand that he has taken in reference to the Sunday closing movement is simply that he, as a member of the church, has converted his former views and, being the vice president of the Sunday Closing Association, he feels himself in duty bound to uphold the objects of his association. He kindly thanked the committee for the pleasant hearing they gave him and withdrew. The committee feel that they have performed their duty to the best of their ability and hereby present the foregoing as the result of our investigations to the officers and members of the association for action.''

Upon this report, the question of the expulsion of Manning being put to vote by the president, he was finally expelled by a more than two thirds vote.

He filed his bill in the court below, alleging the facts herein stated, and praying " that a decree be made, restoring the plaintiff to the full enjoyment of his rights as a member of the Master Barbers' Protective Beneficial Association." This bill was answered by the defendants and referred to a master, who, after hearing all the testimony in the case and a careful consideration, made a lengthy report, the conclusion of which is as follows : " It follows from what has preceded that the plaintiff is entitled to be restored to his functions as a member of the barbers' association, and a decree to that end is respectfully submitted." Exceptions were filed to the master's report which were considered and dismissed. The court below, after a careful consideration of the case and a well considered opinion filed therein, made the following decree : " And now, September 28, 1895, upon consideration of the report of the master and after hearing the argument of counsel for the respective parties, it is ordered, adjudged and decreed, upon payment or a tender by Thaddeus A. Manning of all his dues and assessments owing to the Master Barbers' Protective Beneficial Association from July 20, 1891, to the date hereof, that he be restored by said association to the full enjoyment of his rights as a member, as though he had not been expelled on the said 20th of July, 1891, and that the costs of the cause be paid by the defendants, except J. Aug. C. Goebel."

To this decree the defendants excepted and appealed to this court, assigning the entry of the same as error, for several reasons which are practically embodied in, first, lack of jurisdiction ; second, a failure of proof to sustain the allegations of the bill as against the answer of defendant ; and third, error in restoring the plaintiff to membership in the beneficial association.

There seems to be no serious contention as to the first ground of complaint. We are of the opinion that the court properly assumed jurisdiction in equity. The 13th section of the act of 16th of June, 1836, provides : " The Supreme Court and the several courts of common pleas shall have the jurisdiction and powers of a court of chancery, so far as relates to . . . . The supervision and control of all corporations other than those of a municipal character and *unincorporated societies* or *associations* and partnerships." Such jurisdiction was distinctly recognized and affirmed in Foley et al v. Tovey, 54 Pa. 190. In Wolf v. Com. ex. rel., 64 Pa. 252, in which the court of common pleas, upon a return to a writ of mandamus, rendered a final judgment, restoring the plaintiff to his membership in an unincorporated association, the judgment was, upon appeal to the Supreme Court, reversed, thus indirectly establishing the principle referred to above that a bill in equity is the proper remedy.

The argument upon the second ground, namely, that there is not sufficient proof to sustain the bill as against the answer of the defendants, is based upon a misapprehension as to the grounds upon which the plaintiff in his bill claims relief. It is true that in the 9th paragraph of the bill the plaintiff charges a combination, conspiracy and agreement to expel him from said association, and that his expulsion was the result of such combination and confederation unjustly and illegally entered into by the defendants. That there was an agreement to expel the plaintiff is shown very clearly by the vote which expelled him. That it was a conspiracy in the legal sense is denied by the bill and is not found by the master as a fact, but the illegality of the expulsion as definitely charged in the 10th paragraph of the bill, is the essential matter of fact coupled with the allegation in the 11th paragraph that the " acts of the defendant are contrary to equity and have greatly injured your orator." We are, therefore, of the opinion that the consideration of the case

upon the testimony submitted was properly assumed by the court, and this brings us to the consideration of the last of the defendant's objections which involves the question of the legality of the expulsion of the plaintiff below from the Barbers' Beneficial Association. This question is dependent upon the proper construction of the constitution and by-laws of the association. It is undoubtedly true as a general proposition that the constitution and by-laws of a voluntary association constitute the compact. which binds its members together and the law by which they are to be governed. If the object of the association is a legal and proper one and if its constitution and by-laws do not in any way contravene the rights of the public or the personal or property rights of the individual, the law will hesitate before interfering with the conduct of its members toward each other and the administration of its internal affairs. We have no doubt that the association had the right to expel a member under its by-laws, if such right were properly exercised. This right is inherent in and essential to the preservation of such an organization. The first section of article 16, providing that " any member may be expelled from this association for breach of its constitution, by-laws and rules of order or for conduct tending to the injury of any of its fellow members or of the association," is not unreasonable; and, if the plaintiff, Manning, had been expelled in accordance with this provision of the constitution and those which follow in the same article relating to the trial and the manner in which it is to be conducted, we would not feel disposed to interfere in his behalf. The object of the association, as heretofore quoted, is, among other things, to protect its members in the proper and legitimate transaction of their business. Manning admits that on or about the 27th of April, 1891, as vice president of a society known as " The Sunday Closing Society," whose object was to protect its members in the enjoyment of the rest arising from the proper observance of the first day of the week commonly called Sunday, he made information against the members of the beneficial association who preferred the charge under which he was expelled against him. There was no malice in this charge nor was it made for the sake of injury to these special individuals. Their names were handed to him among a number of others against whom information was made. The question of their

common relationship to the beneficial association was not considered nor was it according to Manning's testimony thought of at the time. Was this such an act as, under the provisions of the constitution, tended to the injury of any of its members? If it was, Manning was bound to refrain from doing anything which could in any way tend to the inconvenience or discom fort of his fellow members. It can hardly be said that, if any one of the persons complaining against him had been indebted to him, he would have been prevented by the constitution of the association from compelling payment thereof by the enforcement of his legal rights, and yet it can readily be seen that, under certain circumstances, such an enforcement might have worked great injury to his fellow member. The word " injury," there, it seems to us must be construed to mean " the unlawful infringement or privation of rights." With Manning's knowledge and with the duty which his connection with the Sunday Closing Association imposed upon him, he would have been a party to the violation of the act of 1794, if he had not made the information which is complained of. This might properly dispose of the case and justify the decree entered by the court below, but we are further of the opinion, on a careful examination of the case, that Manning was not legally tried under the provisions of the constitution of the association. It is true that charges were preferred against him, and that the acts which the members preferring the charges construed to be an injury were set forth in a specification which is fairly explicit; that this charge was referred to a committee of five members for investigation; and that this committee held several meetings, took testimony and reported the same to the association, but that report, if it shows anything, would seem to convey the impression that the members of the committee were satisfied with the explanation which Manning had made. They make no recommendation of his expulsion but rather seem to indicate that he acted in good faith and in accordance with conscientious views held by him, to which the committee takes no exception. The report lacks every element of a finding as the result of a trial and certifies no conclusion to the association. Upon this report Manning was expelled. If this were simply a question of sentiment, it might be that, even under such circumstances, courts would hesitate to interfere,

but the plaintiff below had unquestioned property rights involved which the law is bound to protect. He had for a number of years paid into the treasury of the association the dues and assessments which had enabled the association to meet its obligations to other members. He thereby acquired the right, in case of sickness or accident, to secure like treatment on the part of the association, and, in case of death, provision for his family. It is not a light matter to be deprived of such privileges and courts will carefully scan the steps by which such a conclusion is reached.

It is not necessary further to pursue this subject. The findings of the master and the conclusions of the court are entirely concurred in by us and, for the reasons herein stated as well as for those contained in the opinion of the learned judge of the court below, we affirm the decree; the costs to be paid by the appellant.