Bartron, Appellant, *v.* Northampton County.

Argued January 30, 1941. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Francis H. S. Ede,* with him *David B. Skillman* and
*Joseph Capozzola,* for appellant.

*Calvin F. Smith,* for appellee.

OPINION BY MR. JUSTICE LINN, March 24, 1941:

The question is whether an order of the Public Serv-
ice Commission from which no appeal was taken, may,
in a subsequent proceeding to enforce the order, be set
aside as based on an erroneous interpretation of the

scope of the statute conferring jurisdiction on the Commission.

Public safety required the abolition of several grade crossings on State Highway Route No. 166 in and about the boroughs of Portland and Slateford in Northampton County. The crossings were ordered abolished by the Public Service Commission, predecessor to the Public Utility Commission, by an order dated March 8, 1937. The order also provided for the construction of a new main highway between the boroughs, a distance of about two miles. The Commission imposed liability for the cost of the improvement on parties[1] interested; one of the provisions of the order was: "That the County of Northampton pay all compensation for damages due to the owners of property, exclusive of the respondent railroad companies and the Borough of Portland, for property taken, injured or destroyed in the execution of this improvement." The county did not appeal from the order. Arthur Bartron, claiming that property owned by him was taken for the improvement, applied to the Commission for compensation, whereupon the Commission, pursuant to section 411[2] of the Public Utility Law, 1937, P. L. 1053, 66 PS § 1181, submitted the determination of claimant's damage to the court of

[1] In the order put in evidence the proceeding is entitled "Department, of Highways of the Commonwealth of Pennsylvania v. Delaware, Lackawanna and Western Railroad Company, Lehigh and New England Railroad Company, County of Northampton, Borough of Portland and Township of Upper Mount Bethel, Northampton County."

[2] Providing "That the commission may, of its own motion, or upon application of any party in interest, submit to the court of common pleas of the County wherein the property affected is located, the determination of the amount of damages to any property owner due to such condemnation, for which purpose such court shall appoint viewers, from whose award of damages an appeal to said court shall lie on the part of any person or party aggrieved thereby, under the general law applicable to the appointment of viewers, for the ascertainment of damages due to the condemnation of private property for public use."

common pleas of Northampton County.[3] Viewers were appointed, who, in January, 1939, filed a report awarding $3,500 to Bartron "as damages for the taking of land." The county appealed from that award; the parties joined in an issue to determine "what damages, if any, was plaintiff entitled" to receive; the case was tried and the jury rendered a verdict for the plaintiff in the sum of $6,750. The county filed motions for a new trial and for judgment n. o. v. The motion for judgment n. o. v. was granted on the ground that the Commission had no jurisdiction to make the order requiring the county to pay the damages. This conclusion, if we correctly understand the opinion of the learned court below, was based on the proposition that, although the Commission had exclusive jurisdiction to direct the abolition of grade crossings and the payment of the cost of such abolition, the damage to the plaintiff's property was not the result of the abolition of the grade crossings but of the construction of the new portion of the highway between the two boroughs which was not necessary to the adjustment required by the separation of the grades alone.

On this record we must regard the order of the Commission as predicated on its conclusion that the new section of the highway was required as part of the change immediately necessitated by the separation of the grades and not as something merely accompanying the change: compare *Erie R. R. Co. v. P. S. C.*, 77 Pa. Superior Ct. 196; *Somerset County v. P. U. C.*, 132 Pa. Superior Ct. 585, 1 A. 2d 806. The county now contends

---

[3] "Now, to wit, October 26, 1938, the Pennsylvania Public Utility Commission, under the provisions of Section 411 of the Public Utility Law on its own motion, submits to the Courts of Northampton County, wherein the property is located, the application of Arthur Bartron (D. A. 5) for the determination of the amount of damages due by reason of the improvement ordered by the Commission on March 8, 1937, at Complaint Docket No. 11231."

that the Commission was mistaken in regarding as essential what was merely accidental and therefore asserts that the Commission had no jurisdiction to impose the cost of taking Bartron's property on the county and that this so-called want of jurisdiction requires the court, in this proceeding, to hold that the order cannot be enforced against the county.

It may first be noted that the Commission had exclusive jurisdiction over the regulation and abolition of grade crossings (Acts of July 26, 1913, P. L. 1374, Article V, section 12, and July 17, 1917, P. L. 1025) and that proceedings for abolishing such crossings were required to be instituted before the Commission. See also Public Utility Act 1937, P. L. 1053, Article IV, section 409 et seq., 66 PS § 1179 et seq. There can be no doubt, therefore, of the right of the Commission to enter upon the inquiry submitted to it by the parties to the proceeding; it had jurisdiction of the cause of action.[4] The legislature provided that a party aggrieved by the order of the Commission may appeal to the Superior Court; this provision (1915, P. L. 779, 781-782) directed that "Within thirty days after filing of any finding or determination by the commission, or after the date of service of any order, . . . any party to the proceedings affected thereby may appeal therefrom to the *Superior Court*. . . . The said court is hereby clothed with exclusive jurisdiction throughout the Commonwealth for the purpose of hearing and determining any and all said appeals. . . . All appeals to the *Superior Court* shall be by petition to said court, setting forth specifically and concisely the error or errors assigned to the finding, determination, or order of the commission. . . ." When the Commission made the order imposing the challenged obligation, the county, if dissatisfied, should have appealed to the Superior Court and com-

---

[4] On jurisdiction, see *Heffernan's Appeal*, 121 Pa. Superior Ct. 544, and cases cited p. 547 et seq., 184 A. 286.

plained of the error now relied on. If the county had complied with the statute and brought the matter to the attention of the Superior Court, the error, if there was one, could have been corrected. By not appealing, the county allowed the order to become final; that is, the obligation to pay the damages became an adjudicated fact: compare *Pulaski Ave.,* 220 Pa. 276, 69 A. 749; *Breuninger v. Twp. of Caln,* 112 Pa. Superior Ct. 405, 171 A. 111; *Penna. R. R. v. P. S. C.,* 118 Pa. Superior Ct. 380, 389-391, 179 A. 850.

There has been developed in this Commonwealth a doctrine, based on an early statute,[5] that where a remedy or method of procedure is provided by an Act, its provisions shall be strictly pursued and exclusively applied. That rule is applicable to this record. The legislature had provided the only method of separating the railway and highway grades and had conferred exclusive jurisdiction on the Commission; it was therefore necessary to apply to the Commission to accomplish the separation; anyone aggrieved was likewise bound to follow the prescribed procedure for review of the grievance. The statute did not confer on the county a right to elect whether to test the order by appeal to the Superior Court or to test it later in the common pleas proceeding to assess damages.

It should perhaps be said that the learned county solicitor who presented the case in this court did not represent the county in the proceeding before the Commission. His position is that the rule stated cannot apply to this record because of what he contends is a jurisdictional defect, i. e., want of a fact necessary to the

---

[5] Section 13 of the Act of March 21, 1806, 4 Sm. L. 326, 46 PS § 156; *Lewisburg Bridge Co. v. Union County,* 232 Pa. 255, 264, 81 A. 324; *Fogelsville etc. Co. v. Penna. P. & L. Co.,* 271 Pa. 237, 114 A. 822; *Taylor v. Moore,* 303 Pa. 469, 473, 154 A. 799; *Bowman v. Gum, Inc.,* 321 Pa. 516, 523, 184 A. 258; *Colteryahn Dairy v. Milk Control Comm.,* 332 Pa. 15, 24, 1 A. 2d 775.

See also *Sunshine Coal Co. v. Adkins,* 310 U. S. 381, 404.

exercise of jurisdiction by the Commission. This appears clearly in the following extract from his brief: "It is admitted that if the appellant's property had been adjacent to either the overhead bridge at the Northern end of Slateford or the Township road crossing in the Village of Slateford eliminated, or adjacent to the Lehigh & New England grade crossing eliminated, the Public Service Commission would have had jurisdiction not only to appropriate or take property for such elimination of grade crossings or the relocation of grade crossings, but would also have had jurisdiction to impose the damages resulting from such appropriation or taking either for the abolition or relocation of the crossing itself and the approaches to same. But it must not be forgotten that our contention is directed to something entirely different and that is, that the imposition of payment of damages to property unrelated and not adjacent to any of the grade crossings eliminated, abolished or affected, nor to property taken or appropriated for any approaches thereto (outside of the general scheme of state highways), was entirely beyond the jurisdiction and power of the Commission."

Whether the taking was an essential part of the grade separation or merely accidental and required only for the new highway construction was a matter of fact to be determined, in the first instance, by the Commission. The order is presumed to be based on an affirmative finding that the taking was an essential part of the change of grades. Even assuming that this was a jurisdictional fact, when it was found by the Commission and remained unappealed from, it became final and not subject to collateral impeachment by the county in this or any other proceeding: compare *Youngman v. Elmira, etc. Railroad Co.,* 65 Pa. 278, 287; *Zeigler v. Storey,* 220 Pa. 471, 69 A. 894; *Jones' Case,* 341 Pa. 329; *Chicot County Drainage District v. Baxter State Bank,* 308 U. S. 371; *Sunshine Coal Co. v. Adkins,* 310 U. S. 381, 403; *Jackson v. Irving Trust Co.,* 310 U. S. 621. Hav-

ing reached this conclusion it is unnecessary to say anything about the alleged agreement of the county.

We are not certain from our reading of the record whether the learned court below would have discharged the county's motion for a new trial if it had not concluded to grant the motion for judgment n. o. v. We think, therefore, that we should reinstate the motion for a new trial.

The judgment is reversed; the motion for a new trial is reinstated and the record is remitted for further consideration of that motion.