## Williams *v.* Masters, Mates & Pilots of America, Local No. 2, Appellant.

Argued January 11, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Avram G. Adler,* with him *Abraham E. Freedman* and *Freedman, Landy & Lorry,* for appellants.

*John J. O'Brien, Jr.,* with him *Meehan, O'Brien & Richette,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, March 13, 1956:

Appellees, Hugh D. C. Williams and Charles Sunderland, were plaintiffs in an action in equity brought against Local No. 2, Masters, Mates and Pilots of America, certain of its officers and the individual members thereof. Local No. 2 is an unincorporated labor organization with its principal offices in the City of Philadelphia. It is a subordinate unit of the parent body, National Organization, Masters, Mates and Pilots of America. All members of the local union are members of the National Organization.

Appellees, who had been expelled from the local union, sought by their complaint in equity reinstatement and damages resulting from their removal. After a lengthy hearing at which evidence was adduced by both sides to the controversy, the court, for the reasons hereinafter appearing, did not order the plaintiffs' reinstatement but entered a decree nisi in favor of the plaintiffs Williams and Sunderland, in the sum of six cents each,[1] which was modified by the court en banc by a final decree awarding the sum of $2,600 to the

---

[1] Plaintiff David S. Kloss, Jr. was not available at the trial and his case was not presented. At the conclusion of plaintiffs' evidence the case was dismissed as to him.

plaintiff Williams and the sum of six cents to the plaintiff Sunderland. This decree was opened upon defendants' petition; further testimony was taken after which the court confirmed the final decree previously entered. From this final decree defendants appeal.

The plaintiffs were expelled from Local No. 2 for alleged offenses of misconduct which, through stipulation of counsel, were not considered on their merits by the lower court, and are not in issue here. The only questions to be decided are (1) the validity and effect of certain orders made by the Executive Committee of the National Organization on July 9, 1951 and October 16, 1952, respectively, and (2) whether plaintiffs were entitled to damages and if so, in what amount.

The Constitution and By-Laws of Local No. 2 provide, inter alia, that all charges preferred against a member shall be presented to the Local in writing and signed by a complainant who must be a member in good standing; that upon charges being preferred, a trial committee shall be appointed which will furnish the accused member with a copy of the charges and notify him of the time and place of trial. After the hearing, the findings of the trial committee are submitted to the membership of the local which can accept or reject them. The Constitution and By-Laws provide further in Article XIII, Section 7 that "Any member convicted in the regular manner of an offense against the local may appeal first to the Executive Board of the Local, second to the Executive Board of the National Organization and third to the National Convention of Masters, Mates and Pilots of America.".

Written charges, signed by members in good standing, were preferred against plaintiffs. A trial committee was appointed which notified plaintiffs of the time and place of the hearing and furnished them with an unsigned copy of the charges. A hearing was held

at which plaintiffs did not appear and the trial committee recommended expulsion which was approved by the general membership of Local No. 2. Plaintiffs then appealed to the Executive Committee of Local No. 2 and while these appeals were pending, plaintiffs also appealed to the Executive Committee of the National Organization, which on July 9, 1951 ordered their reinstatement. Local No. 2 refused to comply with this order. On October 16, 1952, about fifteen months later, the National Executive Committee revoked its earlier order of July 9, 1951.

The Constitution and By-Laws of a union constitute the compact which binds its members together and the law by which they are to be governed: *Manning v. Klein et al.,* 1 Pa. Superior Ct. 210; *Leatherman et al. v. Wolf et al.,* 240 Pa. 557, 88 A. 17; they are designed to promote harmony within the body, to prevent disputes, and, if any arise, to provide a tribunal to settle them; *Maloney v. United Mine Workers of America et al.,* 308 Pa. 251, 162 A. 225. The court has jurisdiction to determine whether union officials have exercised their power arbitrarily, and may review the form of proceedings to see that the constitution and by-laws of the society were complied with, but cannot review the case on its merits: *Lodge No. 19, Svete Ime Isusovo v. Svi Sveti et al.,* 323 Pa. 292, 185 A. 650.

We agree with the conclusion of the chancellor, affirmed by the court en banc, that defendant Local No. 2 should have reinstated plaintiffs when ordered to do so by the National Executive Committee on July 9, 1951.

Article XIV, Section 6 of the National's Constitution provides: "Should any local feel aggrieved at any order or action of the National President or any three members of the National Executive Committee, it may appeal from such order or action to the entire Nation-

al Executive Committee, or to the next Convention as the case may be, but every such order and action remains in full force and must be obeyed and complied with, until such order is revoked or modified.". The order of reinstatement was the result of the action of the National Executive Committee in lawful session and in accordance with the above quoted constitutional provision, should have been immediately complied with by defendant Local No. 2 until revoked or modified.

Defendants seek to avoid the effect of Article XIV, Section 6 on the ground that the National Executive Committee had no power, under its Constitution, to issue the order of reinstatement. Article XIX, Section 7 of the National's Constitution (which is the same as Article XIII, Section 7 of the Constitution and By-Laws of defendant Local No. 2, quoted supra) provides that appeals may be made "first to the Executive Board of the Local, second to the Executive Board of the National Organization and third to the National Convention". Plaintiffs filed their appeals with the National Executive Committee approximately seven weeks after they had appealed to the Local's Executive Committee and approximately a month before the Local notified plaintiffs that their appeals were denied.

Defendants claim that plaintiffs should have awaited the outcome of their appeals to the Local Executive Committee and that therefore their appeals to the National Executive Committee were prematurely taken and should not have been entertained. Article XIX, Section 7 covers the matter of appeals in summary fashion. It is far from explicit. It does not provide that the appeal to the National Executive Committee shall be from the decision of the Local Executive Committee. The appeal provided for, from all that appears,

contemplates a hearing de novo and not a review of the proceeding before the Local Executive Committee as in appellate court proceedings. While the implication may be drawn from the provision that there should be a disposition of an appeal taken to the Local Executive Committee before appealing to the National Executive Committee, so important a matter affecting the propriety of an expulsion from the union should not be left to implication. Inaction by the Local Executive Committee could indefinitely deprive an expelled member of the benefits of membership and employment in his vocation. In the instant case after appealing to the Local Executive Committee the plaintiffs waited seven weeks for a decision by that tribunal before appealing to the National Executive Committee. During this period they were deprived of their means of livelihood. This at least was an urgent reason for their appeal to the National Executive Committee, and as persons unlearned in the law, they were not required to scrutinize the loosely drawn provisions for appeal with legal nicety. And even if determination of an appeal to the Local Executive Committee be considered a prerequisite to an appeal to the National Executive Committee, we agree with the court below that the National Organization could waive procedural requirements unless individual rights were adversely affected. Moreover, strict conformance is not exacted in proceedings of this kind. The procedures before the tribunals of an unincorporated labor organization are not subject to the technicalities of a court of law so long as they are conducted in good faith and substantial justice is effected: See *Engle v. Pottsville Division No. 90, Brotherhood of Locomotive Engineers,* 66 Pa. Superior Ct. 356; cf. *Commonwealth ex rel. v. Union League of Phila.,* 135 Pa. 301, 19 A. 1030. In the latter case involving the dismissal of a member of a social club, Mr.

Justice CLARK, speaking for this Court, said at p. 321: ". . . It is not expected that the proceedings of a trial of this character, which are conducted in most cases by persons unlearned in the law, will be expressed with absolute technical accuracy, or will be subjected to the severe scrutiny which is applied, by persons of critical professional skill, in courts of law. . .". We are of the opinion that the plaintiffs substantially and sufficiently complied with the law of the union governing appeals.

The case of *Gordon et al. v. Tomei et al.,* 144 Pa. Superior Ct. 449, 19 A. 2d 588, relied on by the appellants, presented a different factual situation. There it was held that plaintiff members of defendant union were improperly convicted on appeal by the International Executive Board after acquittal by the Local trial board, and consequently were entitled to wages lost through interference with their employment, and certain injunctive relief. In that case the National Union's by-laws provided that appeals *"must"* be filed within thirty days and the Local's Executive Committee, in appealing the Local trial board's action of acquitting the plaintiffs, failed to meet this thirty-day limitation. It was pointed out that the word "must" was used in its mandatory sense and that therefore the Local Executive Committee was under a strict obligation to appeal within the time fixed by the by-laws. In the instant case, Article XIX, Section 7 of the National's Constitution, provides that appeals *may* be made to the Executive Board of the Local, and to the Executive Committee of the National. In addition, here the appeal is by individual members of the union rather than by the local organization, and the question is not whether the National Organization could itself dispense with a time limitation for appeal but merely whether the National's Executive Committee could de-

termine plaintiffs' appeal before the Local Executive Committee had passed on the question.

In their brief in this Court appellants refer to Article VI, Section 5 of the National Constitution which provides: "The National President or any other member of the National Executive Committee is forbidden from accepting any case from any member of this Organization, unless it comes to them through the local to which such member belongs, or through a Deputy or Supervisor of the District.", and contend that this prevented the Executive Committee of the National Organization from entertaining the plaintiffs' appeal. It is sufficient to state that this contention is here made for the first time and was not presented to or considered by the court below. In their answer to the plaintiffs' complaint the defense interposed was that plaintiffs had not properly followed and exhausted their remedies under the appellate procedure provided for in Article XIX, Section 7 of the National Constitution. This was the defendants' position throughout the proceedings in the lower court and there was no reliance placed upon the above quoted Article VI, Section 5 which, consequently, was not discussed or considered by the chancellor or the court en banc. We have repeatedly held that on appeal matters not raised in, or considered by, the court below cannot be invoked by the appellant. See *Sherwood v. Elgart*, 383 Pa. 110, 117 A. 2d 899; *Magazzu Election Case*, 355 Pa. 196, 49 A. 2d 411; *Montgomery County Bar Association v. Rinalducci*, 329 Pa. 296, 197 A. 924. It may be observed, however, that even if the point were properly raised there is grave doubt of its efficacy. It is far from clear whether the language and import of the provision in question which is directed to the National President and members of the Executive Committee individually, also applies to the Committee collectively

qua Committee, as is the case here, and whether the prohibition against accepting "any case" includes appeals by a member from the action of his Local, a matter covered by Article XIX, Section 7 of the National Constitution.

We turn now to the question of damages. Plaintiffs were entitled to be reinstated by defendant Local No. 2 under Article XIV, Section 5 of the National Constitution, supra, when ordered to do so by the parent body on July 9, 1951, and consequently were entitled to damages for wrongful interference with their right of employment for the period from July 9, 1951 to October 16, 1952 when the National Organization revoked the earlier order of reinstatement. The lower court found that the average earnings from other employment of plaintiff Sunderland, after his removal from the Local, were greater than his earnings as a master or mate, and this is not disputed here. With respect to plaintiff Williams, however, the lower court awarded him $2,600 in damages. Appellants contend that Williams did not fulfill his duty to mitigate damages in that he did not seek or obtain employment as a master or mate on sea duty outside of the City of Philadelphia. Unquestionably, the burden of showing that by reasonable efforts plaintiff Williams could have found such employment was upon the defendants: *Babayan v. Reed et al.*, 257 Pa. 206, 101 A. 339; *J. D. Emery et al. v. S. A. Steckel*, 126 Pa. 171, 17 A. 601. During the period in question, July 9, 1951 to October 16, 1952, Williams was recognized by the National Organization as a union member, and certain evidence was presented tending to show that had he gone to New York or some other port, he could have obtained employment as a master or mate since he was backed by the National union. However, there was also evidence to show that not only was Williams unable to obtain such employ-

ment in Philadelphia because he was not recognized by defendant Local No. 2, but also that if he had obtained such employment in another city, he would be dropped as soon as Local No. 2 found out about it and objected. The lower court expressly found that defendants had not proved plaintiff Williams could obtain or keep work as a master or mate on sea duty during the period in question. The record supports this finding.

Even assuming that plaintiff Williams could have obtained employment in ports other than Philadelphia where he resided, legally he was not compelled to do so in order to mitigate his damages. Ordinarily a person cannot be forced to go to another locality to obtain work at his chosen occupation in order to mitigate damages: See *Emery v. Steckel,* supra. To the same effect are Williston on Contracts, Revised Edition, §1359; Restatement, Agency, §455, comment d; *Martin v. Board of Education of Lincoln County,* 120 W. Va. 621, 199 S.E. 887; *San Antonio & A. P. Ry. Co. v. Collins,* 61 S.W. 2d 84, (Tex. Com. App.)

Decree affirmed at the cost of appellants.