Berberian, Appellant, *v.* Lancaster Osteopathic Hospital Association, Inc.

Argued October 2, 1958; reargued January 14, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and McBRIDE, JJ.

*Laurence H. Eldredge*, with him *Francis X. Diebold, John W. Beyer*, and *Arnold, Bricker, Beyer & Barnes*, for appellant.

*Anthony R. Appel,* for appellee.

*Alexander T. Stein,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 20, 1959:

This suit in equity was instituted by Dr. Harry S. Berberian against the Lancaster Osteopathic Hospital Association, Inc. and Dr. George C. Wolf, the medical director of the hospital, to restrain them from discharging the plaintiff from the hospital's staff and from depriving him of staff and hospital privileges. The plaintiff moved for a preliminary injunction, to be made permanent upon final hearing. The complaint alleges that the plaintiff was removed as a staff member of the hospital without notice of charges against him and without a hearing as required by the by-laws of the hospital's staff. The court issued a rule on the defendants to show cause why a preliminary injunction should not be granted. After taking testimony and hearing oral argument on the rule, the court held that the plaintiff was not entitled to equitable relief and discharged the rule to show cause. From the consequent decree refusing a preliminary injunction the plaintiff took this appeal. As the material facts are not in dispute, and present for decision a pure question of law, nothing is to be gained by sending the case back for a final hearing on the bill in the court below.

The plaintiff is a licensed osteopathic physician and has been a member of the defendant hospital's staff since March 9, 1948. He testified that he has enjoyed a larger general practice in and about the City of Lancaster than any other osteopath and that his work has included a large number of obstetrical cases.

On February 27, 1958, the plaintiff was arrested on a charge of conspiracy to commit an abortion and

of being an accessory before and after the fact of abortion. Promptly after this arrest, the president of the staff requested Dr. Berberian to submit voluntarily his resignation as a staff member. That, he refused to do. On March 10, 1958, the executive committee of the staff held a meeting for the purpose of determining whether to recommend the plaintiff's dismissal as a staff member because of the abortion charges that had been made against him. After notice of the call, Dr. Berberian and his counsel attended the meeting. The executive committee decided to make no recommendation pending final legal disposition of the abortion charges for which he never was indicted. On the day following the meeting called by the executive committee of the staff, the board of directors of the hospital held a meeting at which the individual defendant, Dr. George C. Wolf, was requested to prepare a report concerning Dr. Berberian.

On April 7, 1958, a combined meeting of the hospital's board of directors and the staff executive committee was held for the purpose of considering Dr. Wolf's report. The plaintiff received no notice of this meeting and did not attend. As described in the plaintiff's brief, the Wolf report, which was read at the meeting, "contains many charges of grossly unprofessional conduct and of even criminal misconduct of a serious nature, involving moral turpitude." On the following day, April 8, 1958, the board of directors of the hospital, after again hearing Dr. Wolf's report, adopted a resolution depriving Dr. Berberian of all staff privileges and of the use of the hospital's facilities.

It is admitted by the defendants that the dismissal of the plaintiff was based on the allegations contained in the Wolf report and not on the unpursued abortion charges. Although the plaintiff had been given a hearing in respect of the abortion charges he had never

been given any opportunity to answer the report's grave allegations, most of which were based on hearsay relayed to Dr. Wolf. In fact, at the time of the hearing in the court below on the preliminary injunction motion, the plaintiff had never seen a copy of the report and had no knowledge of its contents.

It is obvious that the plaintiff will suffer irreparable harm unless injunctive relief be granted him. The corporate defendant is the only osteopathic hospital in Lancaster County. Elsewhere, the nearest of such hospitals is at York, some 30 miles distant from Lancaster, and at Harrisburg, approximately 40 miles away. For all practical purposes, therefore, the corporate defendant's hospital is the only one to which Dr. Berberian can conveniently and satisfactorily have his many obstetrical and other patients admitted.

The question of the reasonableness of the hospital's action in the premises is not an issue in this case. Nor is there any doubt that Dr. Berberian was not given a hearing in respect of the charges contained in Dr. Wolf's report. The only question for determination is whether the plaintiff was legally entitled to such a hearing before being dismissed as a staff member of the hospital and denied use of the hospital's facilities.

The general rule, as stated by the courts of various jurisdictions, is that the board of directors of a private hospital association may, at its own discretion, remove a physician from its staff: *West Coast Hospital Association v. Hoare* (Fla.), 64 So. 2d 293, 297; *Hughes v. Good Samaritan Hospital*, 289 Ky. 123, 127, 158 S.W. 2d 159, 161. It has, however, been held that a *public* hospital must give notice and hearing before a member of its staff may be removed: *Findlay v. Board of Supervisors of the County of Mohave*, 72 Ariz. 58, 66, 230 P. 2d 526, 531; *Alpert v. Board of Governors of City Hospital*, 286 App. Div. 542, 547-548, 145 N.Y.S. 2d

534, 538; *Johnson v. Ripon*, 259 Wis. 84, 86-87, 47 N.W. 2d 328, 330. It has also been held that even a *private* hospital must give a hearing before removing a physician from its staff if the duly approved constitution or by-laws so provide: *Joseph v. Passaic Hospital Association*, 26 N.J. 557, 568-569, 141 A. 2d 18, 24.

The relationship between a hospital association and a member of the hospital's staff is based on contract: see *Joseph v. Passaic Hospital Association*, supra, at 26 N.J. 569, 141 A. 2d 24-25; *State ex rel. Wolf v. La Crosse Lutheran Hospital Association*, 181 Wis. 33, 38, 193 N.W. 994, 996; *Johnson v. Ripon*, supra at 259 Wis. 86, 47 N.W. 2d 329. Consequently in a case such as the present, the nature of the contractual relationship between the assailed staff member and the hospital association determines whether a hearing on charges against the staff member is necessary before he can be discharged from a hospital staff because of such charges.

The by-laws of the Lancaster Osteopathic Hospital Association, adopted on February 9, 1945, provide that "The directors may deprive any member of the staff, any physician or any surgeon from the privileges of the hospital." In addition thereto, however, the board of directors of the hospital approved the by-laws of the general staff which provide as follows in Article I, Section E: "1. The Executive Committee reserves the right at any time, *but only after adequate hearing and thorough investigation*, to recommend to the Board of Directors the suspension of any officer or member of the General Staff or to deprive any physician or surgeon the privilege of hospital use whenever in its judgment the good of the hospital, the patient, or community shall demand. 2. Any individual so suspended may have recourse to appeal, with legal counsel, before a joint meeting of the Executive Committee of the General Staff and the Board of Directors." (Emphasis supplied.)

The procedure established for investigating alleged breaches of professional ethics by any member of the staff is set out in Article III, Section E(7) of the staff by-laws which provides, in part, as follows: "The member charged with a breach of ethics shall be privileged to legal counsel of his own choosing, and shall be entitled, upon his written request, to a hearing before a Committee of the Board of Directors and a Committee of the General Staff in joint session at which hearing he may present his defense and cross examine adverse witnesses." The current by-laws of the staff containing the foregoing provisions were expressly approved by the hospital's board of directors in December, 1957. Indeed, the president of the hospital's board of directors unequivocally gave it as his opinion, when this matter was on hearing before the court below on the plaintiff's motion for a preliminary injunction that the board of directors is bound by the by-laws of the general staff. With that conclusion, we agree.

While there can be no doubt that the board of directors of the hospital has authority to deprive a physician of the privileges of the staff, it is equally clear that the board has agreed to follow certain specified procedures before determining whether to exercise its authority in a matter of a staff member's expulsion from the hospital. The procedure so approved by the board requires an "adequate hearing and thorough investigation" by the executive committee of the general staff and an "appeal, with legal counsel, before a joint meeting" of the staff's executive committee and the hospital's board of directors. When the board of directors approved the staff by-laws, they became an integral part of the contractual relation between the hospital and the members of its staff.

The specification of a particular procedure, including procedural safeguards, is ordinarily the exclusive

remedy to be pursued. Otherwise, such safeguards, including provisions for a hearing, would have no meaning. It is for this reason, inter alia, that this court has uniformly applied the rule that if a remedy or method of procedure is provided by statute, its provisions shall be exclusively pursued and strictly applied: *Oteri Appeal*, 372 Pa. 557, 561, 94 A. 2d 772; *Colove v. Robesonia Borough*, 364 Pa. 626, 628, 73 A. 2d 679; *Bartron v. Northampton County*, 342 Pa. 163, 168, 19 A. 2d 263. Likewise, the remedies extended by the internal regulations of a voluntary association in respect of the expulsion of members must be given strict compliance: *Lodge No. 19, Svete Ime Isusovo v. Svi Sveti*, 323 Pa. 292, 294, 185 A. 650; *Gordon v. Tomei*, 144 Pa. Superior Ct. 449, 460-461, 19 A. 2d 588. This is particularly true where individual rights may be adversely affected: *Williams v. Masters, Mates & Pilots of America, Local No. 2*, 384 Pa. 413, 419, 120 A. 2d 896. In *Lodge No. 19, Svete Ime Isusovo v. Svi Sveti*, supra, at p. 294, it was held that the adjudication of the highest tribunal of a voluntary association is final only if ". . . it is determined that the laws of the society were strictly complied with, and that the officers acted reasonably and in good faith."

In *Hemphill v. Enterprise Lodge No. 75*, 66 Pa. Superior Ct. 134, 141, the court stated: "When it is proposed to expel a member so situated it is necessary that compliance with the law which the members have ordained be observed. It is the rule that to support an expulsion all the facts essential to the conviction both as to the cause of disfranchisement and the mode of proceeding must be made to appear [citing cases]." In *Manning v. Klein*, 1 Pa. Superior Ct. 210, 216, it was said that "It is undoubtedly true as a general proposition that the constitution and by-laws of a voluntary association constitute the compact which

binds its members together and the law by which they are to be governed."

In *Blenko v. Schmeltz*, 362 Pa. 365, 371-372, 67 A. 2d 99, the plaintiff, a patent attorney, brought suit to restrain the board of managers of the Patent Law Association of Pittsburgh from expelling him from membership therein. He had been given no hearing by the Association. We granted the plaintiff an injunction on the basis of an opinion by Mr. Justice LINN in which it was said that "The right of property vested in members of unincorporated associations rests on the agreement of the associates and may vary with the nature and purposes of the association. The contract creates the right and even the state may not impair the obligation of the contract. Equity interferes in the interest of all the rights flowing from the contract relation."

While Dr. Berberian's relationship to the hospital was not that of membership in a voluntary organization, nevertheless he and the hospital had, in legal contemplation, entered into a contract whereof the provisions of the staff by-laws, as approved by the hospital's board of directors, constitute the legally binding terms. In the circumstances present, the defendant corporation is bound by the staff by-laws just as much as a voluntary association is bound by the provisions of its by-laws. In both instances, the respective organizations have enacted and approved the by-laws which are an integral part of the contractual relationship between such organizations and their members or ones holding under them.

A recent New Jersey decision, *Joseph v. Passaic Hospital Association*, 26 N.J. 557, 141 A. 2d 18, 23, 24, has substantially the same facts as the case at bar. There, the defendant hospital association refused to reappoint the plaintiff to the emeritus staff of the

hospital. As in the instant case, no hearing had been given although the medical staff by-laws specifically provided that "Before a man fails of reappointment, he shall be given an opportunity to be heard by the Board of Governors if he so desires." The Constitution of the Hospital Association provided for a hearing in the event of the removal of a member of the staff. However, only the staff by-laws were applicable in the circumstances of the case. The court held that since the Hospital Association had approved the staff by-laws, it was bound by the provisions thereof. Therefore, the hospital could not refuse to reappoint the plaintiff until a hearing had been given. The opinion of the court stated that "The [Medical Staff] By-laws were ratified by the Board of Governors, and thereby became a constituent part of the Association's elemental law." The court went on to say that "A hearing on notice is of the essence of the cited provisions of the Constitution and By-laws. . . . The requirement of a hearing before 'a man fails of reappointment' is quite clearly intended to protect the staff member against arbitrary, capricious and oppressive action involving his professional qualifications, standing and prestige and the opportunity and facilities for continued service, and for the good of the Hospital as well. . . ."

The decree is reversed at the defendants' costs with directions that an injunction issue restraining the defendants from depriving the plaintiff of staff or other hospital privileges or facilities of the defendant corporation except after a hearing duly had with a right of appeal in the plaintiff as provided for in the by-laws of the hospital's staff.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

On April 8, 1958, Dr. Berberian was deprived of staff and hospital privileges by the Board of Directors

of the Lancaster Osteopathic Hospital Association without giving him a hearing. The Board took this action after carefully considering a report from Dr. Wolf, Medical Director of the Lancaster Osteopathic Hospital, which stated—in great detail—that Dr. Berberian for a number of years had often been guilty of "grossly unprofessional conduct and even of criminal misconduct of a serious nature involving moral turpitude."

It is the general rule that a Board of Directors of a private hospital may remove a physician from its staff in its discretion and without a hearing, unless the constitution or by-laws provide for a hearing. While the privilege of being a member of the staff of a particular hospital or having hospital privileges is obviously very valuable, a doctor has no vested right therein or thereto. There are many doctors in the Lancaster area and in every large metropolitan area who do not belong to the staff of a particular private hospital and never acquire staff or hospital privileges therein.

The "By Laws of the Lancaster Osteopathic Hospital Association Inc." provide in Art. 2, section 10, "The directors may deprive any member of the staff, any physician or any surgeon from the privileges of the hospital." The Board of Directors by resolution stated that it deprived Dr. Berberian of all staff privileges of the hospital and use of its facilities because the members of the Board *unanimously* concluded that "the conduct of Dr. Berberian has seriously interfered with the efficient and sound operation and management of the hospital." Private hospitals are managed by a Board of Directors composed of public spirited, able citizens who unselfishly give their time, ability and services in the public welfare without salary or recompense. While we believe it would have been fairer and wiser for the Board to have given Dr. Berberian a hearing, even though he did not have any vested or lawful

right thereto, it is clear from the record that the Board and the lower Court had reasonable and ample grounds for their respective action.

In *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 123 A. 2d 626, the Court said: "Our uniform rule is that, on an appeal from a decree which refuses, grants or continues a preliminary injunction, we will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable: Commonwealth v. Katz, 281 Pa. 287, 288, 126 A. 765; Lesher v. Thomas S. Cassner Co., 285 Pa. 43, 44, 131 A. 657; Murray v. Hill, 359 Pa. 540, 541, 59 A. 2d 877; Cohen et al. v. A. M. Byers Company et al., 363 Pa. 618, 619, 70 A. 2d 837." See to the same effect *McDonald v. Noga,* 393 Pa. 309, 141 A. 2d 842.

The Doctors who were members of the *general staff* adopted a set of by-laws to govern themselves which were separate and very different from the Directors' by-laws and in many respects inconsistent therewith. The Board of Directors approved the by-laws which the General Staff adopted to govern themselves. *This approval does not amount,* as appellant contends, *to an adoption* of the staff by-laws by the Board of Directors, as the by-laws themselves further demonstrate.*

These staff by-laws furnish another complete answer to appellant's argument. The By-laws of the "Lancaster Osteopathic Hospital *General Staff,"* upon which

---

* With respect to "intention", if the Board of Directors had intended to adopt these staff by-laws *as their own,* is it conceivable that these public spirited, un-salaried men would have *unanimously* deprived Dr. Berberian of all staff and hospital privileges without a hearing?

appellant relies, provide as follows: "Article I, Section E: 1. *The Executive Committee* reserves the right at any time, but only after adequate hearing and thorough investigation, *to recommend to the Board* of Directors the suspension of any officer or member of the General Staff or to deprive any physician or surgeon the privilege of hospital use whenever in its judgment the good of the hospital, the patient, or community shall demand.

"2. Any individual so suspended may have recourse to appeal, with legal counsel, before a joint meeting of the Executive Committee of the General Staff and the Board of Directors." This by-law merely gives, as it clearly states, *the Executive Committee* of the General Staff* *a discretionary power,* if it desires to exercise it, *to recommend* to the Board of Directors after hearing or investigation, the denial of hospital privileges to any physician or surgeon. It is clear that this by-law of the General Staff has no application to this case, since the Executive Committee never exercised their discretionary power or recommended to the Board of Directors the deprivation of Berberian's hospital privileges.

Since the Court below had reasonable grounds to refuse a preliminary injunction, I would affirm the decree.

---

DISSENTING OPINION BY MR. JUSTICE BENJAMIN R. JONES:

On this appeal from the refusal of a preliminary injunction our review is limited to a determination of

---

* Article III, Section D. 1. The Executive Committee shall be composed of the President, President-elect, Vice-President, Secretary-Treasurer of the General Staff, the chairman of each of the Clinical Departments and two active staff members . . . .

whether the court below had "any apparently reasonable grounds" for its action (*Lindenfelser v. Lindenfelser,* 385 Pa. 342, 123 A. 2d 626). An examination of the record convinces me that the court below did have "reasonable grounds" for its action and, therefore, I dissent.