Cavit OZLU, Plaintiff,

v.

**LOCK HAVEN HOSPITAL,**
Defendant.

Civ. No. 72-608.

United States District Court,
M. D. Pennsylvania.

Sept. 19, 1973.

**674**

Robert L. Martin, Bellefonte, Pa., for plaintiff.

Alvin L. Snowiss, Lock Haven, Pa., J. Thomas Menaker, Harrisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

On August 13, 1973, Plaintiff Cavit Ozlu moved for Partial Summary Judgment against Defendant, Lock Haven Hospital. The grounds stated by Plaintiff were: (1) by the terms of the contract of employment between Ozlu, a medical pathologist, and Lock Haven Hospital, the Hospital could not cancel Doctor Ozlu's contract on less than 90 days written notice as it had done, and; (2) under the by-laws of the Medical Staff of the Hospital and the by-laws of the Defendant's Board of Trustees, Plaintiff's contract could not be cancelled without prior conference of the Medical Staff, nor without the Credentials Committee of the Medical Staff investigating and reviewing charges made by Defendant against Plaintiff as to Plaintiff's performance and competence as staff pathologist nor without an opportunity for Plaintiff to appeal to the joint conference committee composed of members of the medical staff and the board of trustees in closed session.

From 1964 until the latter part of 1970, Plaintiff served Lock Haven Hospital as the professional and administrative head of the Department of Pathology and Clinical Laboratory. His contract was renegotiated in 1969, to commence on November 1 of that year. Paragraph 1 of the contract said it was to continue "until cancelled by either party upon not less than ninety (90) days prior written notice." Paragraph 2 of the contract designated the Plaintiff "a member of the active medical staff of the Hospital with all the privileges of and subject to the supervision of the Hospital." Paragraph 2 further states: "It is expressly agreed that his privileges as a member of the medical staff and his position of head of the Hospital's department of pathology and clinical laboratory shall continue until his contract is terminated." The contract also details the doctor's duties and covers other matters relevant to the pathologist's position.

Plaintiff contends that, construing the pleadings most favorably to the party opposing the motion for summary judgment, he should be granted summary judgment on the liability issue as a matter of law, as the Defendant breached the contract of employment with the Plaintiff, by summarily dismissing

Plaintiff on November 2, 1970 without giving him 90 days notice and without the procedural remedies allegedly afforded all holders of Hospital staff privileges.

The Defendant's opposition to Plaintiff's motion is grounded upon the argument that: (1) Defendant had a right to rescind its contract with Doctor Ozlu and was not limited to cancellation of the contract by giving ninety days notice because of Dr. Ozlu's supposed earlier breach of contract allegedly consisting of a failure to perform the duties and responsibilities to the Hospital as agreed to in the contract of November, 1969, and (2) that the regulations and by-laws of Lock Haven Hospital setting out the procedural rights outlined in the beginning of this opinion only become part of the contract of non-employee doctors who acquire staff privileges. The manner in which non-employee doctors attain staff privileges and the procedural rights they consequently obtain are expressed in the same body of hospital regulations. There is nothing in the regulations specifically relating them to employee doctors.

■ One additional matter should be noted: While Plaintiff's complaint proceeds strictly on a contract theory in challenging Defendant's failure to follow its own internal procedures in denying hospital privileges to Plaintiff, the Plaintiff's Motion for Partial Summary Judgment asserts that the procedural rights attending revocation of hospital privileges exist as a matter of due process under the federal Constitution because of the public or quasi-public status of Lock Haven Hospital. The Defendant does not address itself to the merits of this claim and contends it must fail because it was not pleaded in the complaint. It is well recognized that pleadings must be liberally construed in federal courts to determine whether, under any state of facts, Plaintiff's claim may be supported. Conley v. Gibson, 355 U. S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957); American Technical Machinery v. Masterpiece Enterprises, Inc., 235 F. Supp. 917, 918 (M.D.Pa.1964). In the present case, we have a Plaintiff moving for summary judgment on a cause of action which he has never pleaded. The facts and issues pertaining to a constitutional claim of the sort herein involved are quite different from the facts and issues relevant to Plaintiff's contract claim. It would not be fair to the Defendant to consider at this time a motion for summary judgment by the Plaintiff upon issues as to which the Defendant was not even put on notice. This portion of the opinion is in no way intended to limit Plaintiff's proof of facts at trial; it is merely directed to informing the parties as to why Dr. Ozlu cannot prevail at this time on his motion for summary judgment based on a constitutional ground never raised before the time of the motion.

■ Plaintiff's motion for Partial Summary Judgment on his contractual claims must also be denied. Contractual language susceptible of more than one reasonable interpretation may present a question relating to the intention of the parties upon which presentation of evidence would be appropriate. Lapierre v. Federated Plans, Inc., 195 F.Supp. 407, 409 (W.D.Pa.1961); New Wrinkle v. John L. Armitage & Co., 238 F.2d 753 (3d Cir. 1956); Aetna Casualty & Surety Co. v. Giesow, 412 F.2d 468 (2d Cir. 1969). Plaintiff cites Berberian v. Lancaster Osteopathic Hospital Association, Inc., 395 Pa. 257, 149 A.2d 456 (1959) holding that hospital regulations governing the procedure involved in revoking a staff doctor's privileges become part of the contract between the Doctor and the Hospital and that denial of these procedures to the Doctor sought to be discharged is a breach of contract by the Hospital. Doctor Berberian was a non-employee staff member of the Defendant hospital. The Defendant, Lock Haven Hospital, contends the Berberian case is inapposite since an employee doctor does

not become part of the hospital staff under the same regulations as does the non-employee doctor and hence is not entitled to the contractual rights given to non-employee doctors.

■ Adler v. Montefiore Hospital, 453 Pa. 60, 311 A.2d 634 (Decided July 2, 1973), deals with a different situation than that under consideration but it refers in the following language to the same problem encountered by Dr. Ozlu. "When appellant was replaced as director, therefore, any rights he may have had to a hearing hinged solely on his staff membership." Whether Dr. Ozlu was hired and given privileges under the same termination provisions as non-employee staff doctors cannot be determined from the briefs and documentary materials before me. Evidence as to custom and usage in this field can be relevant. There is also some question about the meaning of the term "staff privilege" itself and as to what is included therein which cannot be decided by this Court as a matter of law.

■■ If Lock Haven Hospital is correct and Dr. Ozlu has so materially breached his contract so that the hospital may rescind its contract with him, the Defendant may very well be excused from having to comply with the ninety-day clause. There may also be emergency situations excusing the ninety-day clause. The question as to the observance of the ninety-day cancellation clause in the contract between Dr. Ozlu and Lock Haven Hospital may depend entirely on the facts to be adduced at trial. On a motion for summary judgment it must be assumed that the opposing party's facts are true and if, indeed, Dr. Ozlu was guilty of a breach of the "entire contract," the claim that Defendant is liable to the Plaintiff is obviously in doubt. Testimony should come forth at trial which will enable the trier of fact to determine the actions of each party with regard to the contract between them.

An appropriate order will be entered.